The United States, Plaintiffs in error, *v.* Mary L. Eliason, Administratrix of William A. Eliason, Defendant in error.

An action was brought by the United States against Captain Eliason, for a balance due by him as disbursing officer at Fortress Calhoun. The defendant claimed an allowance as commissions on the disbursement of large sums of money under the orders of the War Department in 1834, and the years included up to 1838, under the regulations of the War Department contained in the Army Regulations printed in 1821, "at the rate of two dollars per diem, during the continuance of such disbursements, provided the whole amount of emoluments shall not exceed two and a half per cent. on the sum expended."

By a subsequent regulation of the War Department of 14th March, 1835, adopted in consequence of the provisions of an act of Congress of 3d March, 1835, all extra compensation of every kind, for which provision had not been made by law, was disallowed. The defendant's intestate claimed that the provisions of the act of March 3d, 1835, were applicable only to the disbursing of public money appropriated by law during the session of Congress in which that act was passed. Held: that the order of the War Department of 14th March, 1835, took away all right to the extra allowances claimed under the prior army regulations.

In the district of Columbia, a writ of error lies to the decision of the Circuit Court, upon an agreed case. The same principle has been applied in cases brought before the Supreme Court from other parts of the United States. Cited, Faw *v.* Robertson's Executors, 3 Cranch, 173; Tucker *v.* Oxley, 5 Cranch, 34; Kennedy *v.* Brent, 6 Cranch, 187; Brent *v.* Chapman, 5 Cranch, 358; Shankland *v.* The Corporation of Washington, 5 Peters, 390; Inglee *v.* Cooledge, 2 Wheat. 363; Miller *v.* Nichols, 4 Wheat. 311.

The power of the executive to establish rules and regulations for the government of the army is undoubted. The power to establish, necessarily, implies the power to modify on to repeal, or to create anew. The Secretary at War is the regular constitutional organ of the President for the administration of the military establishment of the nation; and rules and orders, publicly promulgated through him, must be received as the acts of the executive, and as such are binding upon all within the sphere of his legal and contitutional authority.

IN error from the Circuit Court of the United States for the county of Washington, in the district of Columbia.

In February, 1839, the United States instituted a suit against William A. Eliason, a captain in the United States corps of engineers, for the recovery of two thousand four hundred and ninety-two dollars and eighteen cents, a balance in his hands, of

moneys paid to him for the purpose of disbursement at Fort Calhoun, and of one hundred and eight dollars and fifty-seven cents, beyond the incidental expenses of fortification, making together two thousand six hundred dollars and seventy-five cents. On the decease of Captain Eliason, the suit was proceeded in against his administratrix.

In the Circuit Court, the counsel for the plaintiffs and the defendant agreed upon the following statement.

"On the trial of the above cause, the plaintiffs, to maintain the issue on their parts joined, offered in evidence the transcript from the Treasury Department, (showing the balance claimed,) and the defendant then offered evidence to show that the said intestate was a captain in the United States corps of engineers, and as such was ordered to take charge and superintend the works on Fortress Calhoun, and took charge of, and continued the said work from the 7th of November, 1834, to the 10th of September, 1838; and further offered in evidence the general regulations of the War Department, as follows. And, further, that the said intestate while thus employed, disbursed two hundred and fourteen thousand three hundred and ninety-two dollars and sixty-one cents: that he was also directed to take charge of, and superintend the removal of a light-house into Fortress Calhoun, in which service he disbursed one thousand one hundred and forty-three dollars and thirteen cents: and further, that he was charged with the disbursement of, and did disburse the sum of one thousand eight hundred and ninety-one dollars and forty-three cents, for incidental expenses of fortifications, beginning in the year 1830; and that he purchased for the use of the Engineer Department, a set of instruments and case, and the department allowed him for the instruments, but refused to allow him for the case, amounting to ten dollars; and further, that the pay and emoluments of the said intestate had been stopped by the government of the United States, from the 31st of December, 1838, to the 15th day of June, 1839, amounting to one thousand and fourteen dollars and ninety-five cents: and the defendant then claimed credit."

The account of Captain Eliason, which had been submitted to the accounting officers of the Treasury; and the appropriations in the Treasury, were made a part of the case.

[The United States *v*. Eliason.]

The regulations of the War Department of 13th March, 1835, were:

" The proviso in the act of Congress, passed March 3, 1835, entitled 'An act making additional appropriations for the Delaware Breakwater, and for certain harbours, and removing obstructions in and at the mouths of certain rivers, for the year one thousand eight hundred and thirty-five ;' and which prohibits the allowance of extra compensation to officers of the army, has been submitted to the attorney-general for his opinion, and that officer has decided that it extends to, and prohibits the allowance of all extra compensation, of every kind whatsoever, for which provision is not made by law. Hereafter, therefore, no such extra compensation will be allowed."

The prohibition under this order took effect from the passage of the law.

The instructions, after enumerating particular offices held to be included in the proviso, by the Secretary at War, proceed to say: "The construction of the act will apply, so as to prevent the granting of any extra compensation of any nature whatever, unless expressly authorized by law.

"The attorney-general has decided that the general clause in the above proviso will render illegal the allowance of any per centage or compensation for disbursing appropriations, made previous to, as well as during the last session of Congress."

Article 67, sec. 14, from the Army Regulations, printed in 1821, was also in evidence .

" Where there is no agent for fortifications, the superintending officer shall perform the duties of agent, and while performing such duties, the rules and regulations for the government of the agents shall be applicable to him ; and, as compensation for the performance of that extra duty, he will be allowed for moneys expended by him in the construction of fortifications, at the rate of two dollars per diem during the continuance of such disbursements : provided the whole amount of emolument shall not exceed two and a half per cent. on the sum expended."

In the Circuit Court the following judgment was given : "The Court is of opinion that the proviso in the act of the 3d of March, 1835, ch. 303, is only applicable to the disbursing of public money appropriated by law during the session of Congress in which that

2 B 2

act was passed; and it appearing therein, to the satisfaction of the Court that no part of the money so as aforesaid disbursed by the said defendant, was appropriated at the said session of Congress, the Court is also of opinion that the said intestate was entitled to the allowance claimed by him for the disbursements as above stated, and do thereupon order the judgment to be entered for the said defendant."

The United States prosecuted this writ of error.

The case was argued by Mr. Legaré, the attorney-general, for the United States; and by Mr. Bradley, for the defendant.

Mr. Legaré contended, that the regulations of the War Department, of March 13th, 1835, were conclusive on the claims of all the officers of the army, who came within their provisions.

He was fully aware of the decision of this Court in General Gratiot's Case, and in Minis's Case, 15 Peters, 423, but the principle which was now claimed, was not affected by the rule laid down in those cases. The cases of the United States *v*. Ripley, 7 Peters, 18, and the other cases in the same volume, stand unaffected by the principle on which the United States now rely.

These are special regulations of the War Department, and the department had full authority to establish such rules. If the true construction of the act of Congress of March 3d, 1835, is that it applied only to appropriations made at that session; the regulations of the War Department, proprio vigore, had a full and valid application to all the cases subsequent to them, to which they applied.

The question submitted to the Court is, whether after the regulations of 13th March, 1835, any allowance can be claimed for those extra services?

Mr. Bradley, for the defendant, argued, that as the cause was adjudged in the Circuit Court on a case stated, the writ of error should be dismissed.

1. No writ of error will lie on a special case stated, 3 Black. Com. 378; Tidd's Pract. 808, 809; 1 Archibold's Pract. pl. 192; Stephen's Pleading, 93.

2. Where a writ of error will not lie, there can be no bill of exceptions. 1 Archbold's Pract. 187; Hard. 249, Bos. & P. 3, 16; Tidd's Pract. 791; 1 Salk. 254; 1 Black. Rep. 679.

3. On a special case stated, unless the judge expressly reserves the power of turning the special case into a special verdict; it cannot be done. 2 Dowl. Rep. 78; and the cases cited on the other points.

As to the right of set-off, no doubt or controversy exists. The claim of Captain Eliason has, in fact, been allowed up to the passage of the act of 3d March, 1835. In the case of Minis v. The United States, 15 Peters, this Court decided that the act prohibited extra allowances only in the cases of the disbursement of public money, appropriated during the session of Congress of 1834, 1835. The claim now before the Court is for services in disbursing appropriations made before and since that act. The right of the defendant in error is not, therefore, affected by that act.

The claim is rested on the usage of the department, and upon the Army Regulations, and on numerous decisions of this Court, down to the case of Gratiot in 15 Peters; in which such claims were most distinctly recognised, and the previous decisions affirmed.

It seems to be conceded, that the claim should have been allowed, but for the order of the War Department of 14th March, 1835, by which such claims are supposed to be prohibited.

In Gratiot's Case, 15 Peters, 371, the Court, after having stated the right of the government thus to employ officers, and the right to compensation growing out of it, say, " To sustain the refusal of the Court, in the present case, it is therefore indispensable to show that there some law which positively prohibits, or by just implication denies any of the disputed items, or any part of them."

It is conceded that there is no such law ; but it is argued that the implied contract cannot exist in the face of the order or regulation of the War Department of 14th of March, 1835.

Could this order or regulation revoke the regulations of 1821, 1825? They were made in obedience to a law of Congress. They ought to have the force of law. Did it intend to repeal those regulations? Is it, on its face, anything more than the exposition of the act of 3d March, 1835, as construed by the attorney-general of the United States soon after it was passed?

If that construction was erroneous ; as has been decided by this Court; is not the detailed exposition in the orders of the War Department equally erroneous?. Although it professes to be prohibitory, is it anything more than an opinion—an erroneous opinion

of the Secretary at War? He says the prohibition took effect from the passage of the law. Could this do so? It is not designed, and ought not to be construed as a repealing regulation. It is not so on its face, or upon a full examination of its language.

Mr. Justice DANIELS delivered the opinion of the Court.

Upon a writ of error to the Circuit Court of Washington county, in the district of Columbia.

On the 16th day of February, 1839, the plaintiffs instituted an action of assumpsit in the Circuit Court of Washington county, against William A. Eliason, for the balance of two thousand six hundred dollars and seventy-five cents, charged against him on the books of the Treasury as disbursing officer at Fortress Calhoun, between the dates of the 7th of November, 1834, and the 10th of September, 1838.

The defendant Eliason appeared to the suit and filed the plea of non-assumpsit, upon which issue was joined; but having died before the cause came to trial, the defendant in error, as administratrix of the decedent, was made a party defendant, and the cause regularly progressed to trial upon the issue made up between the original parties. Upon the trial before the Circuit Court, the following case was agreed between the parties by their attorneys, to be subject to the opinion of the Court, as to the law upon the same, viz.: On the trial of the above cause, the plaintiffs, to maintain the issue on their part joined, offered in evidence the transcripts from the Treasury Department, (which are found in pages 12 to 16 of the Record,) and the said defendant then offered evidence to show that the said intestate was a captain in the United States corps of engineers, and as such was ordered to take charge and superintend the works on Fortress Calhoun, and took charge of, and continued the said work from the 7th November, 1834, to the 10th September, 1838 : and further offered in evidence, the general regulations of the War Department, as follow, art. 67, sec. 14: "Where there is no agent for fortifications, the superintending officer shall perform the duties of agent; while performing such duties, the rules and regulations for the government of such agents shall be applicable to him; and as compensation for the performance of that extra duty, he shall be allowed for moneys expended by him, in the construction of fortifications,

at the rate of two dollars per diem, during the continuance of such disbursements, provided the whole amount of emolument shall not exceed two and a half per centum on the sum expended." And, further, that the said intestate, while thus employed, disbursed two hundred and fourteen thousand three hundred and ninety-two dollars and sixty-one cents: that he was also directed to take charge of, and superintend the removal of a lighthouse into Fortress Calhoun, in which service he disbursed one thousand one hundred and forty-three dollars and thirteen cents: and further, that he was charged with the disbursement of, and did disburse, the sum of one thousand eight hundred and ninety-one dollars and forty-three cents, for incidental expenses of fortifications beginning in the year 1830; and that he purchased for the use of the Engineer Department, a set of instruments and case, and the department allowed him for the instruments, but refused to allow him for the case amounting to ten dollars; and further, that the pay and emoluments of the said intestate had been stopped by the government of the United States, from the 31st December, 1838, to the 15th day of June, 1839, amounting to one thousand and fourteen dollars and ninety-five cents; and the defendant then claimed credit

| | |
|---|---:|
| For compensation for disbursing money on account of Fortress Calhoun from 7th November, 1834, to 10th September, 1838, up to which time he was in charge of said work, inclusive, at $2 per day - - - | $2,816 00 |
| Of which this amount only had been allowed - - | 234 00 |
| Balance - - - - | 2,582 00 |
| For money disbursed on account for removing lighthouse, &c. - - - - - - - - | 21 64 |
| For money disbursed for incidental expenses of fortifications - - - - - - - - | 46 95 |
| For case of instruments - - - - - - | 10 00 |
| For pay and emoluments, (marked B.,) copied at page 29 - - - - - - - - | 1,014 95 |
| | $3,689 26 |
| For balance of account rendered 29th March, 1839 - | 74 79 |
| | $3,764 05 |

And further offered evidence that all the claims above stated, except that for pay and emoluments, had been submitted to, and rejected by, the accounting officer of the Treasury Department; and further produced and offered in evidence the following statement of the state of the appropriations under which the disbursements were made.

The plaintiffs offered in evidence the Regulations of the War Department of the 14th of March, 1835: "The proviso in the act of Congress passed March 3, 1835, entitled 'An act making additional appropriations for the Delaware Breakwater, and for certain harbours, and removing obstructions in and at the mouth of certain rivers, for the year one thousand eight hundred and thirty-five;' and which prohibits the allowance of extra compensation to officers of the army, has been submitted to the attorney-general for his opinion, and that officer has decided that it extends to, and prohibits the allowance of all extra compensation of any kind whatever, for which provision is not made by law. Hereafter, therefore, no extra compensation will be allowed." And upon the aforegoing statements it is submitted to the Court to say whether the defendant's intestate was entitled by law to the allowances claimed by him for disbursements as above stated. If the Court is of opinion that he is so entitled, then the judgment to be for the defendant; if otherwise, for the plaintiffs, for the amount appearing due by the transcript.

> F. S. KEY, for the United States,
> Jos. H. BRADLEY, for defendant.

Upon the statement of facts agreed, as above mentioned, the Circuit Court pronounced the following opinion and judgment:— "And thereupon, upon the full consideration of the case stated as aforesaid, the said Court is of opinion that the proviso in the act of the 3d March, 1835, ch. 303, is only applicable to the disbursing of public money, appropriated by law during the session of Congress in which that act was passed; and it appearing therein, to the satisfaction of the Court, that no part of the money so as aforesaid disbursed by the said defendant, was appropriated at the said session of Congress; the Court is also of opinion that

the said intestate was entitled to the allowances claimed by him for the disbursements as above stated, and do thereupon order the judgment to be entered for the said defendant." To this opinion an exception was taken by the plaintiffs, which was sealed by the Court and made a part of the record.

Before considering the questions of law arising upon the agreed statement, and upon the exception taken to the opinion and judgment pronounced upon that statement, it is proper to advert to a point which has been made, in limine, by the counsel for the defendant in error, and which, if decided as he has contended it should be, would prove conclusive as to the fate of this cause. It is insisted by the defendant's counsel that this Court cannot take cognisance of the present cause, for the reason that having been tried upon an agreed case, a writ of error will not lie to the decision thereon.   This position of the counsel is founded upon a remark of Mr. Justice Blackstone in his Commentaries, which has been transferred to the work of Mr. Tidd, and to some other compilations upon the practice in the English Courts of common law.  The passage in Blackstone, which will be found in his chapter on the Trial by Jury, vol. 3, p. 377, Coleridge's edition, is as follows: "Another method of finding a species of special verdict, is, when the jury find a verdict generally for the plaintiff, but subject, nevertheless, to the opinion of the Court above on a special case stated by the counsel on both sides with regard to the matter of law: which has this advantage over a special verdict, that it is attended with much less expense, and obtains a speedier decision, the postea being stayed in the hands of the officer of nisi prius, till the question is determined, and the verdict is then entered for the plaintiff or defendant as the case may happen.  But as nothing appears on the record but the general verdict, the parties are precluded hereby from the benefit of a writ of error, if dissatisfied with the judgment of the Court or judge upon the point of law; which makes it a thing to be wished, that a method could be devised of either lessening the expense of special verdicts, or else of entering the cause at length upon the postea."

It is manifest from this quotation, that the reason why, according to the practice in the English Courts, a writ of error will not be allowed after a case agreed, is this, and this only; that in those

Courts, the agreed case never appears upon or is made a part of the record, and therefore there is no ground of error set forth, upon which an appellate or revising tribunal can act. In the language of Justice Blackstone, "nothing appears upon the record, but the general verdict; whereby the parties are precluded from the benefit of a writ of error," &c., "which makes it," says the same learned judge, "a thing to be wished, that a method could be devised, either of lessening the expenses of special verdicts, or else of entering the cause at large upon the postea." The same rule in the English Courts of law, and the same consequence as resulting solely from their practice, may be seen in the Treatise on Pleading, by Stephen, p. 92, where the author, in speaking of the practice of taking special verdicts, and general verdicts subject to a special case, remarks, that a special case is not like a special verdict entered on record, and consequently a writ of error cannot be brought on this decision. There has been a recent statute enacted in England, which, although it is not brought sufficiently to the view of this Court to justify any direct inferences as to its terms or its bearing upon this particular question, may have been designed to remedy the very evil pointed out by Justice Blackstone. By a note to page 92, of Mr. Stephen's Treatise, it is said to have been enacted by 3d and 4th William the 4th, cap. 42, that where the parties on issue joined can agree on a statement of facts, they may, by order of a judge, draw up such statement in the form of a special case, for the judgment of the Court, without proceeding to trial. By the established practice anterior to this statutory provision, it was in the power of the parties to agree upon a statement of the case; it would seem reasonable and probable, therefore, that the power given to the judge, (as an exercise of his judicial functions,) to regulate the statement, was designed to impart a greater solemnity and permanency to the preparation of the proceeding, and to place it in an attitude for the action of some revising power. But even should a want of familiarity with the detail of English practice induce the hazard of misapprehension of its rules, or of the reasons in which they have their origin, the decisions of our own Courts, and the long established practice of our own country, are regarded as having put the point under consideration entirely at rest.

[The United States v. Eliason.]

·By the act of Congress of 1801,·assuming the, government of the District of Columbia, in virtue of the cession from Maryland and Virginia, the laws of these states, and of course the proceedings in their Courts as parts of these laws, were expressly recognised within such portions of the District, respectively, as originally were within the limits of the ceding states.   See 3 Story's Laws, 2089; The United States v. Simms, 1 Cranch, 255.   At the period of the cession, the practice is believed to have been well settled both in Virginia and Maryland, that in trials at law where special or agreed cases have been made, they have been signed by the counsel as representing their clients, and spread at large upon the record as a part thereof; and as constituting the only legitimate ground for the action of the Court, and as furnishing the regular and proper test to be applied by an appellate or revising tribunal to this action.   The practice is believed to be the same at this day; it has been repeatedly recognised by the decisions of this Court; and, if ever heretofore seriously questioned, has never been overruled.   See Faw v. Robertson's Executor, 3 Cranch, 173; Tucker v. Oxley, 5 Cranch, 34; Kennedy v. Brent, 6 Cranch, 187; Brent v. Chapman, 5 Cranch, 358; and Shankland v. The Corporation of Washington, 5 Peters, 390.   These are cases arising within the District of Columbia, but the same practice has been sanctioned in cases brought hither from without the District, as will be seen in the decisions of Ingle v. Cooledge, 2 Wheat. 363, and of Miller v. Nicholls, 4 Wheat. 311.   This Court, therefore, have no hesitancy in declaring, that the point of practice raised by the defendant's counsel presents no objection to the regularity in the mode of bringing this case before them.

In considering the exception taken to the opinion of the Circuit Court, in relation to the act 'of Congress of March 3d, 1835, the order of the War Department, of March 13th, of the same year, and the rights of the plaintiffs, and of the defendant, as connected therewith, this Court have no difficulty in pronouncing the opinion and decision of the Circuit Court as altogether untenable. The power of the executive to establish rules and regulations for the government of the army, is undoubted.   The very appeal made by the defendant to the fourteenth section of the sixty-seventh article of the Army Regulations, is a recognition of this

Vol. XVI.—2 C

right. The power to establish implies, necessarily, the power to modify or repeal, or to create anew.

The Secretary of War is the regular constitutional organ of the President for the administration of the military establishment of the nation ; and rules and orders publicly promulged through him must be received as the acts of the executive, and as such, be binding upon all within the sphere of his legal and constitutional authority.

Such regulations cannot be questioned or defied, because they may be thought unwise or mistaken. The right of so considering and treating the authority of the executive, vested as it is with the command of the military and naval forces, could not be entrusted to officers of any grade inferior to the commander-in-chief; its consequences, if tolerated, would be a complete disorganization of both the army and navy. In the present instance, the order was adopted by the proper authority, and by the same authority promulged to every officer, through the regular official organ; and the question propounded to the Circuit Court was neither more nor less than this, whether a subordinate officer of the army, insisting upon a prior regulation, which he thinks either is or ought to be in force, shall obtain from the government emoluments which a subsequent order from his superior had warned him that it was not in his power to require? This question can need no argument for its solution. This Court are, therefore, of opinion that the Circuit Court have erred in allowing to Captain Eliason, a per diem, as disbursing officer at Fortress Calhoun, subsequently to the 3d day of March, 1835. Under the fourteenth section of the sixty-seventh article of the Army Regulations, they do, therefore, reverse the decision of the Circuit Court; and direct that a judgment be entered for the plaintiffs, for the sum of two thousand six hundred dollars and seventy-five cents, as claimed by them, together with their costs.