## PATRICK HICKEY *versus* WILLIAM HUSE.

A private in the military service of the U. S., who does not rejoin his company or regiment at the expiration of his furlough, may be arrested as a deserter.

The Act of Congress of March 3, 1863, c. 75, § 7, made it the duty of provost marshals to arrest all deserters wherever found.

No warrant is necessary for the arrest of a deserter.

Provost marshals had a right to appoint assistants; and such assistants, while acting within the line of their duty, are entitled to the same protection as provost marshals.

A suit commenced Dec. 11, 1866, for an arrest made Sept. 10, 1864, is barred by § 7, of the Act of Cong., of March 3, 1863, and § 1, of May 11, 1866,

ON REPORT.

TRESPASS for false imprisonment. The writ was dated Dec. 11, 1866, alleging that the defendant with force and arms arrested the plaintiff, against his will, on Sept. 10, 1864, carried him to Portland, and then and there, as well as in sundry other places, restrained him of his liberty until Oct. 8, 1864, &c.

It appeared that the plaintiff was a private in Co. E, 29 Maine Volunteers, was wounded April 8, 1864, at the battle of Sabine Cross-roads, and was sent to Portsmouth Grove Hospital in R. I., where he received a furlough for twenty days, dated Aug. 19, 1864, which expired on Sept. 8, 1864; that, just previous to its expiration, one Dr. Kimball, a physician and surgeon resident in York County, examined the plaintiff and certified under oath that the plaintiff would not be fit for duty for ten days thereafter, and sent the certificate to the P. G. Hospital; that the defendant met plaintiff on the street in Biddeford, on Sept. 10, 1864, and arrested him, carried him to Portland and thence to Augusta, where he was delivered to Asst. P. M. General Littler. From Augusta, he was sent to Washington, D. C. The charge of "desertion" was removed by special orders from the war department, and the plaintiff was honorably discharged from the service in Sept., 1865.

*J. M. Goodwin,* for the plaintiff.

*Edwin B. Smith,* for the defendant.

APPLETON, C. J. — The plaintiff was enlisted and mustered into the military service of the United States. Having been wounded he obtained a furlough. After its expiration, he procured a certificate from a surgeon resident in this county, that he was physically unable to return to duty. Regarding that certificate in the light of an extended furlough, he did not return to duty. He was thereupon, on 10th Sept., 1864, arrested by the defendant, acting under the express direction of the provost marshal of the first

district of Maine, by whom he was transferred to the provost marshal of the State, at Augusta.

This action is brought for the arrest thus made. The defendant justifies under the laws of the United States.

The plaintiff was a soldier in the army of the United States. He was thus subject to the laws of Congress and to the army regulations established in pursuance of those laws.

The plaintiff had a furlough. It is not produced. It must be presumed to be within the authority of the officer by whom it was given. By the Act of Congress " for establishing rules and regulations for the government of the army of the United States," approved April 10, 1806, c. 20, art. 12, furloughs may be given to non-commissioned officers and privates " for a time not exceeding twenty days in six months." By an Act approved March 3, 1863, c. 75, § 32, furloughs are allowed to be granted to non-commissioned officers and privates " for a period not exceeding thirty days at any one time." It is immaterial for what length of time the plaintiff's furlough was given, as, by his own showing, it had expired.

The President of the United States has power to establish rules and regulations for the government of the army and navy of the United States, and the rules and orders issued by the Secretary of War and the Secretary of the Navy, who are his constitutional organs in their respective departments, are to be considered as emanating from the Executive. *U. S.* v. *Eliason*, 16 Pet., 291. Mr. Justice WAYNE, in *U. S.* v. *Freeman*, 3 How., (U. S.,) 566, referring to the army regulations, says: — " The President sanctioned those regulations, and, by so doing, delegated his authority, as he had a right to do, to the Secretary of War. The army regulations, when sanctioned by the President, have the force of law, because it is done by him by the authority of law." In *Gratiot* v. *U. S.*, 4 How., (U. S.,) 117, Mr. Justice WAYNE uses the following language: " As to the army regulations, this Court has too repeatedly

said, that they have the force of law, to make it proper to discuss this point anew, and such of them as were asserted in the case by counsel, as not warranted by law, the Court think as obligatory as any of the rest."

By the Revised Army Regulations, issued Aug. 10, 1861, by the Secretary of War, and approved by the President, the form of a furlough is prescribed by Art. 22. By its terms, at its expiration, the soldier to whom it is granted, "will rejoin his company or regiment at ———, or where-ever it may then be, or be considered a deserter."

The plaintiff did not return at the expiration of his fur-lough. *Prima facie*, he was to be deemed a deserter. Being a deserter, as would appear by the army records, he was liable to arrest, and he was arrested. The rights of the parties must be determined by the condition of things when the arrest was made. Was the arrest, when made, in violation of law?

By the Act approved March 3, 1863, c. 75, § 7, it is made "the duty of the provost marshals to arrest all deserters, whether regulars, volunteers, militia men or persons called into the service under this or any other Act of Congress, wherever they may be found, and to send them to the near-est military commander or military post," &c.

By § 26, the President of the United States was author-ized to issue a proclamation for all deserters to return to duty. The President issued the contemplated proclamation calling upon all good citizens to aid in restoring absent sol-diers to their regiments.

It is obvious that the provost marshals in the several congressional districts could not attend to their duties in arresting deserters, and in the drafting of soldiers without assistants. Regard being had to their various and onerous duties, the implication is inevitable that they would have the right and that it would be their duty to appoint agents or deputies to aid and assist. Those agents or deputies while acting within the line of their duty would be entitled to the same protection as their several principals.

For the arrest of a deserter no warrant is necessary. The proper officer may do it without a warrant. The appointment of the provost marshal is not questioned. The authority of the defendant to act in the premises is established. *Hutchings* v. *VanBokelin*, 34 Maine, 126.

The arrest, then, was made by a proper officer of one, who, not having returned at the expiration of his furlough, was by its terms to be considered a deserter. It was legally justified by the facts existing at the time it was made.

·The plaintiff introduced special order No. 252, dated at Washington, Oct. 8, 1864. It shows that he was on the records of the army as a deserter, and that, for good cause, the charge was removed. But the removal was after the arrest. The arrest was none the less authorized at the time it was made. The plaintiff may be free from moral blame, but he was none the less liable to arrest. The defendant is free from fault. He obeyed the law, and the law, in conformity with which he acted, must be his protection. *Wilkes* v. *Dinsman*, 7 How., (U. S.,) 89. S. C. 12 How., U. S., 390.

The trespass complained of was committed Sept. 10, 1864. This suit was commenced Dec. 11, 1866, a period of more than two years having elapsed since its committal. By an Act approved March 3, 1863, c. 81, § 7, it is provided "that no suit or prosecution, civil or criminal, shall be maintained for any arrest or imprisonment made, or other trespasses and wrongs done or committed, or are omitted to be done, at any time during the present rebellion, by virtue or under color of any authority derived from or exercised by or under the President of the United States, or by or under any Act of Congress, unless the same shall have been commenced within *two* years next after such arrest, imprisonment, trespass or wrong, may have been done or committed, or act may have been omitted to be done," &c. By § 5, the defence of justification, under the orders or authority of the President, "may be made by special plea or under the general issue." By an Act approved May 11, 1866, all

orders from proper officers, to perform certain acts, are to be a defence to suits on account of such acts, and the Act of March 3, 1863, c. 81, is made in all respects applicable.

Even if the defendant were originally liable, the limitation prescribed by the Acts of Congress, to which we have referred, would constitute a perfect bar to this suit.

*Judgment for the defendant.*

CUTTING, DICKERSON, BARROWS, DANFORTH and TAPLEY, JJ., concurred..