## UNITED STATES *v*. BADEAU.

*(Circuit Court, S. D. New York.* **July 6, 1887.)**

1. JURY—QUESTIONS OF LAW AND FACT—FEES OF OFFICER.

    The question in this case, whether a consular officer was entitled to retain certain moneys received by him as received for non-official services, or whether he was obliged to account for them as received for official acts, *held*, upon the evidence, not to present a question of fact for the jury; there being no conflict in the evidence as to the character of the acts for which the moneys were received.

2. PLEADING—AMENDMENT AT TRIAL—REFUSAL OF.

    To refuse an amendment of the complaint on the trial, the effect of which would be to change a fully stated cause of action for money had and received into one upon an account stated, thus introducing technicalities not tending to the promotion of justice, is a just exercise of the discretion of the trial court.

3. CONSULAR OFFICER—NON-OFFICIAL FEES—ACCOUNTING.

    Fees received by a consular officer for taking affidavits, acknowledgments, and authentications for individuals, in transactions having no relation, direct or remote, with the official business of the government, are for services not required by consular regulations, and are the personal emoluments of the officer, for which he is not required to account to the treasury department.

4. DEPARTMENT REGULATIONS—INTERPRETATION.

    The construction and interpretation by the state department of the regulations issued to consuls by the secretary of state, defining what acts are to be deemed official and what non-official, are controlling as to their meaning in case of doubt, and should conclude the accounting officers of the treasury department.

At Law.

*Stephen A. Walker*, U. S. Atty., for the United States.

*Stephen G. Clarke*, for defendant in error.

WALLACE, J.  This suit was brought in the district court to recover
sums of money, amounting in the aggregate to $10,572.64, received by
the defendant to the use of the plaintiff between July 1, 1870, and Sep-
tember 16, 1881, as consul general of the United States at London, En-
gland.  In the final account rendered by the defendant to the govern-
ment in December, 1882, he credited the government, and charged him-
self, with certain moneys in his hands, less the sum in controversy;
which sum he claimed he was entitled to withhold out of the moneys in
his hands, because it represented the amount of fees which he had there-
tofore erroneously charged against himself in former accounts rendered
to the government.  The issue upon the trial was whether the defend-
ant was entitled to retain these fees, amounting in the aggregate to
$10,572.64, as non-official fees, or whether they belonged to the govern-
ment as official fees.  The case for the government was rested upon the
production in evidence of a treasury transcript of the account of the
defendant.  The nature of the items charged to the defendant in this
account, comprising the sum in controversy, appears in the treasury
transcript, so that upon the face of the account it was shown that the
defendant had charged himself with fees received for specified acts or
services, amounting in the aggregate to $10,572.64; and the only ques-
tion upon the face of the account was whether these acts or services were
official or non-official in their character.  The case for the defendant was
rested upon his own testimony that the items with which he had orig-
inally charged himself, comprising the sum in controversy, were moneys
received as fees for the acts and services described and detailed in the
account, and upon further testimony tending to show the interpretation
and construction of the department of state in respect to the regulations
prescribing the duties of consular officers.

At the close of the evidence each party requested peremptory instruc-
tions to the jury,—the plaintiff, to render a verdict in its favor; and
the defendant, to render a verdict in his favor.  The court ruled that
the defendant erroneously charged himself originally with the items
which comprise the sum in controversy, because they consisted of fees
received by him for non-official acts.  The counsel for the plaintiff then
asked to go to the jury upon the question whether the fees were received
by the defendant for non-official acts, but the court instructed the jury
to find a verdict for the defendant.  The plaintiff has brought this writ
of error to review these rulings, and other rulings made during the prog-
ress of the trial, to which the plaintiff took exceptions.

There is no merit in the exceptions to the rulings of the court in ad-
mitting evidence.  Even if the testimony received should be deemed
irrelevant, as the case was not submitted to the jury, the jury were not
misled.

Neither is there any merit in the exception to the ruling of the court
refusing to submit any question of fact to the jury.  There was no con-
flict of evidence as to what the acts were for which the fees in contro-
versy were received by the defendant.  Whether they were official or
non-official was a question of law.  The fees were received for taking

affidavits, acknowledgments, and authentications for individuals in transactions which had no relation, directly or remotely, with the official business of the government. As the law was ruled by the court, if the jury had found against the defendant as to any part of the sum in controversy, it would have been the duty of the court to set aside the verdict as against the weight of evidence. The judge, therefore, properly declined to submit any question of fact to the jury.

There was no error in the refusal of the court to permit the amendment of the complaint sought by the plaintiff. The motion was addressed to the discretion of the court. The refusal was also a just exercise of discretion, because the complaint fully set out the facts constituting the cause of action; and an amendment allowing a cause of action for money had and received to be turned into one upon an account stated would have merely tended to introduce technicalities, and would not have promoted justice.

The real question in the case is whether the defendant was entitled to retain the items with which he originally charged himself, or whether these items were for fees received by him officially, and for which he was bound to account to the government. The district judge, in his disposition of this question upon the trial, assigned reasons for his conclusion that the items represented fees for non-official acts which are entirely satisfactory to this court, and it is unnecessary to recapitulate or enlarge upon them. It is proper to say, however, that the position taken by the defendant that the fees were for services not required by consular regulations, but were for services of a non-official character, which were his personal emoluments, and for which he was not required to account to the treasury department, is fully sustained and justified by the interpretation and construction placed by the department of state upon the meaning of its own regulations and instructions to consular officers. The president was authorized by section 1745 of the Revised Statutes to designate what services of consular officers should "be regarded as official," besides such as are expressly declared by law. The services for which the fees in controversy were charged, if they were official, were so because they had been designated as of that character by the president. The president, in the exercise of his executive power, under the constitution, acts through the head of the appropriate executive department. The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. *Wilcox* v. *Jackson,* 13 Pet. 498, 513; *U. S.* v. *Aliason,* 16 Pet. 291, 302; *Confiscation Cases,* 20 Wall. 102, 109; *U. S.* v. *Farden,* 99 U. S. 10, 19; *Wolsey* v. *Chapman,* 101 U. S. 755, 759.

The regulations of 1870 and 1874 recognize the non-official character of notarial acts, and other acts which a consul may do, "not in his quality of an agent of the federal government, but simply as a citizen of the United States, whose local position and character render him available to his fellow-citizens for such services as might have been rendered by private individuals." The interpretation placed upon the regulations by

the state department sufficiently appears in the evidence upon the trial. It was the opinion of that department, communicated to consular officers during the time the defendant was in office, and uniformly acted upon by that department, that services like those in controversy were unofficial services. The action of the accounting officers of the treasury department, in disallowing to the defendant the items with which he had erroneously charged himself, seems to have proceeded upon the assumption that they were more competent to determine what acts performed in the state department, by its subordinate officers under its own regulations, are official, and what are non-official, than that department itself. In a difference of opinion upon any such question it is hardly necessary to say that the judgment of the appropriate executive department will generally prevail.

The judgment is affirmed.