**ZERBST, Warden, v. KIDWELL, and seven other cases.**

**Nos. 8468, 8476–8478, 8495, 8516, 8527, 8555.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1937.

Bates Booth, Sp. Asst. to the Atty. Gen., and Lawrence S. Camp, U. S. Atty., and Harvey H. Tysinger and Hiram T. Nichols, Asst. U. S. Attys., all of Atlanta, Ga., for appellant.

Clint W. Hager, of Atlanta, Ga., for appellee Smith.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

These eight cases were argued and submitted together, present the same questions for decision, and may be conveniently disposed of by one opinion. The material facts common to all the cases are these. Appellees, while serving sentences in federal prisons, were released on parole or by reduction of their sentences for good conduct. Before the maximum terms of their sentences had expired they committed federal offenses for which they were convicted and sentenced to imprisonment in the Atlanta penitentiary. The judgments were silent as to the time these second sentences were to begin. In each case, after the prisoner was incarcerated under the second sentence, a member of the Parole Board issued a warrant, directed to any federal officer authorized to serve criminal processes within the United States, reciting that satisfactory evidence had been presented to him that (the person named) had violated the condition of his release, was deemed to be a fugitive from justice, and commanding that the warrant be executed by taking the prisoner, wherever found in the United States, and returning him safely to the institution hereinafter designated. However, the warrant did not designate the institution. The warrants were sent to the warden of the Atlanta penitentiary with a letter instructing him to place the warrant as a detainer and to take the prisoner named into custody on the warrant at the expiration of his present sentence. The letter further instructed that the case should be listed for a hearing on the violation charge only after (the person named) is in custody on the warrant. The warrants were served and appellees were detained as instructed. Appellees were released on habeas corpus after each had served more time in the penitentiary after his return thereto than the remainder of his first sentence, without deducting any allowance for good conduct or the time he was at large on parole or conditional release before being returned to serve the second sentence.

There are some slight variations of the facts in each case. Illustrating these differences in the broadest way we may refer to the facts more in detail as appearing in the case of Sullivan, No. 8555. Sullivan was convicted in the Northern District of Alabama in May, 1934, and sentenced to serve 22 months imprisonment. He was committed to the United States reformatory at Chillicothe, Ohio, was allowed a credit of 132 days on his sentence for good conduct and released. While at large he was again convicted in the same court and was sentenced to serve 18 months in the Atlanta penitentiary, that institution having been designated by the Attorney General. He was delivered to the Madison county jail on April 9, 1936, awaiting transportation to the Atlanta penitentiary, and was delivered to the latter institution on April 11, 1936. He was again granted credit for good conduct and his second sentence expired on June 22, 1937, at which time he had served 439 days in the Atlanta penitentiary. He was not released but was held in jail on a warrant issued by the Parole Board on March 17, 1936, awaiting a hearing as to the revocation of his conditional release on the first sentence. After a hearing he was ordered discharged on habeas corpus July 31, 1937. He had then been detained 39 days beyond the expiration of his second sentence.

■ There is no doubt the Parole Board had jurisdiction over the appellees when they were released from prison on their first sentences. Under the provisions of the Act of June 29, 1932, § 4 (47 Stat. 381 [18 U.S.C.A. § 716b]) prisoners granted a reduction of sentence for good conduct are provisionally released, subject to all the provisions of the parole laws.

■ It is immaterial whether appellees were conditionally released or paroled from prisons other than the Atlanta penitentiary. Under the provisions of the Act of May 14, 1930, § 7 (46 Stat. 326 [18 U.S.C.A. § 753f]) in imposing sentences courts are restricted to specifying the type of institution in which the prisoner is to be confined and he is committed to the custody of the Attorney General, who designates the place of confinement. The various prisons are but units of a single system under the control of the Attorney General and he is authorized to transfer any prisoner from one institution to another for any reason sufficient to himself. White v. Kwiatkowski (C.C.A.) 60 F. (2d) 264.

■ It is the general rule that where a person is confined in an institution under two separate sentences they run concurrently, in the absence of any provision to the contrary. Aderhold v. McCarthy (C.C.A.) 65 F.(2d) 452.

Appellant makes no point as to the place of confinement and does not dispute the general rule as to the concurrence of sentences. However, it is contended in each case that the running of the original sentence was suspended during the period the prisoner was incarcerated on the second sentence; and that the parole laws confer on the Parole Board power to require consecutive service of sentences, notwithstanding the general rule. In support of this appellant relies upon Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247.

The parole law was adopted by the Act of June 25, 1910 (36 Stat. 819 [as amended, 18 U.S.C.A. § 714 et seq.]). A separate parole board was created for each jail where federal prisoners were confined, with authority to grant parole after a prisoner had served one-third of a sentence exceeding one year. By section 4 of the act (18 U.S. C.A. § 717), upon reliable information tending to show violation of parole the warden was authorized to issue his warrant for retaking the prisoner at any time within the term of the prisoner's sentence. Section 6 of the act (18 U.S.C.A. § 719) provides as follows: "At the next meeting of the board of parole held at such prison after the issuing of a warrant for the retaking of any paroled prisoner, said board of parole shall be notified thereof, and if said prisoner shall have been returned to said prison, he shall be given an opportunity to appear before said board of parole, and the said board may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

The parole law was amended by the Act of May 13, 1930 (46 Stat. 272). In lieu of the various parole boards a single board of parole was created and all the powers theretofore vested in the various boards and the Attorney General were transferred to the new board (sections 1, 2 [18 U.S.C.

A. §§ 723a, 723b]). Section 3 of the act (18 U.S.C.A. § 723c) provides as follows: "The Board of Parole created by section 723a of this title, or any member thereof, shall have the exclusive authority to issue warrants for the retaking of any United States prisoner who has violated his parole. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the institution, and the time the prisoner was on parole shall not diminish the time he was originally sentenced to serve."

In Anderson v. Corall, supra, it appears that Corall was paroled from Leavenworth Penitentiary on February 24, 1916. On June 28, 1916, the warden issued a warrant for retaking him as a parole violator. Before he was retaken, in October, 1916, he was convicted at Chicago for violation of a state law and sentenced to the Illinois state penitentiary where he was confined until some time in December, 1919. After his release from that prison he was retaken on the warden's warrant and, in January, 1920, the Parole Board revoked his parole. It was held that parole did not suspend service or operate to shorten the term; that while on parole a convict remains in legal custody, under the control of the warden, until the expiration of his term; that Corall's violation of the parole and his confinement in the Joliet penitentiary interrupted his service in question and his status was in legal effect the same as if he had escaped from the control and custody of the warden; and that the Board was authorized, at any time during his term of sentence, in its discretion, to revoke the order and terminate the parole and require him to serve the remainder of the sentence originally imposed, without any allowance for the time he was out on parole. The case was decided by the Supreme Court November 12, 1923. It cannot be considered a construction of the provisions of section 3 of the Act of May 13, 1930 (18 U.S.C.A. § 723c), which was adopted thereafter. The case may be otherwise easily distinguished from those at bar. While confined in the Illinois prison Corall could not possibly have been considered as serving the balance of his federal sentence concurrently with the state sentence.

▪ When appellees were delivered to the penitentiary at Atlanta the provisions of section 3 of the Act of May 13, 1930, immediately took effect and the unexpired portions of their first sentences began to run from that date. The province of the warrants was to secure the return of the prisoners. Since they were already in custody the issuance of the warrants was vain and useless. The warden held the prisoners under both sentences. In Hill v. U. S. ex. rel. Wampler, 298 U.S. 460–465, 56 S.Ct. 760, 762, 80 L.Ed. 1283, it was said: "A warrant of commitment departing in matter of substance from the judgment back of it is void. * * * Being void and not merely irregular, its nullity may be established upon a writ of habeas corpus. * * * 'The prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence.' * * * If the judgment and sentence do not authorize his detention, no 'mittimus' will avail to make detention lawful."

▪ By necessary implication section 3 requires the Parole Board to have a hearing on a parole violation at its first meeting after the prisoner is returned to custody. Cf. Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566. Conceding that thereafter the Parole Board may delay entering the order of revocation in its discretion, the time in which that may be done is limited by the unexpired term of imprisonment. After the prisoner had paid the full penalty of the law it was unnecessary to revoke his parole and the Board was without jurisdiction to do so. It is argued on behalf of appellant that parole violators should be punished and that unless the Parole Board could defer the running of the sentence upon which he was paroled there would be no way to make the sentences run consecutively. The punishment provided by Congress for violation of parole is loss of good time and the time the prisoner may have been at large on parole. In many cases this would be a rather severe punishment. It is not the province of the Parole Board to amend the law by its rules and regulations or to take upon itself the imposition of punishment not provided by law.

▪ The conclusion we reach is that in each case the first and second sentences ran concurrently from the day the prisoner was delivered to the Atlanta penitentiary on the second sentence; that the Parole Board was without authority to delay a hearing on the violation charge and to order that the sentence be served consecutively. In each case the appellee had served more than the remainder of the maximum term for which he was originally sentenced and was entitled to release on habeas corpus.

The judgments appealed from are affirmed.

SIBLEY, Circuit Judge (dissenting).

The conclusion reached by the majority makes impractical any real punishment for the federal offenses committed while out on parole. It is true that the violation of the parole is punished by a loss of good time on the old sentence and by having to serve it in full. But that is all punishment for the old offense and its incidents. It would be suffered whether there was a second federal offense or some other failure to keep parole. Suppose the remainder of the old sentence is two years, and the maximum sentence for the new offense is two years or less. If, as the court holds, the sentences must be served concurrently there is no real punishment for the new crime. The judge can do nothing effectual about it. He cannot terminate the parole or order the arrest of the prisoner as a parole violator, for exclusive power to do all that is expressly vested by section 3 of the Act of May 13, 1930 (18 U.S.C.A. § 723c), in the Board of Parole and its members. If he should direct the new sentence to take effect on the completion of the old, would he release the prisoner meanwhile? Could the prisoner thus be at large for years if the Board failed to act? Would it be right to leave the prisoner in this state of uncertainty? The judges here making the second sentences did what seemed to them their plain duty and their only function: they fixed a punishment for the new offenses and committed the prisoners for its service. The Parole Board, within its function of superintending the execution of the old sentences which had been interrupted by parole, thought parole had probably been violated, and if so the old sentences should be served in full as the parole statute expressly directs. This policy of the statute would not really be carried out by presently terminating the paroles and putting the old sentences into concurrent service with the new. It could only be done by postponing revocation of the paroles, indeed by postponing arrest and return to the penitentiary under the old sentences.

The Board accordingly issued warrants but suspended arrests. This I think was in their discretion under the circumstances and for the purpose disclosed. Section 6 of the Parole Act (18 U.S.C.A. § 719), expressly says that at the next meeting at the prison after the issue of a warrant (which originally might have been issued by the warden without knowledge of the Board) the Board shall be notified and if the prisoner has been returned to prison he shall have opportunity to appear before the Board, "and the said board may then or at any time in its discretion revoke the order and terminate such parole or modify the terms and conditions thereof." Here is express discretionary authority given to postpone the revocation of the parole. If the Board thinks a prisoner ought to serve the old sentence in full, as the Parole Act says he shall, after he has finished serving a new sentence, it can by postponing revocation accomplish it. Where the prisoner has been arrested on a parole warrant and committed to the penitentiary on it alone, he is of course serving his old sentence and not to be prejudiced by the Board's delay, but where he is not so committed, but on an independent charge, this does not follow. To prevent any contention that he is now serving the old sentence, the Board directed that arrest under the parole warrant to be postponed. I think this was within the Board's discretion also.

Since the warrant has been issued and the prisoner is in the prison, though not by virtue of the parole warrant, it may be that he has a right under the literal words of section 6 to make a prompt showing before the Board on the question whether he has broken parole. He might otherwise lose his evidence. But that is not the question here. These prisoners have been turned loose as having served their old sentences while serving the new, contrary to the will and discretion of the Board, and that result it seems to me is not in accordance with law and justice.