A. McDONALD, Warden, Federal Correctional Institution, Texarkana, Texas,

v.

Morris W. LEE.

No. 15017.

United States Court of Appeals
Fifth Circuit.

Dec. 9, 1954.

Rehearing Denied Jan. 5, 1955.

Hutcheson, Chief Judge, dissented.

James W. Booth, Judge Advocate General's Office Dept. of Army, Washington, D. C., William M. Steger, U. S. Atty., Harlon E. Martin, Asst. U. S. Atty., Tyler, Tex., for appellant.

Lemuel C. Hutchins, Tyler, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

In a habeas corpus proceeding the district court held that two court-martial sentences, the first for ten years and the second for six months, were served concurrently by Morris W. Lee up to the time he completed the six months sentence, and hence that he was entitled to be released on December 10, 1953 at the expiration of his ten year sentence.

On January 20, 1947, Lee, then a private in the United States Army in Germany, was tried and found guilty by a general court-martial of the offenses of escape from confinement in violation of Article of War 69, 41 Stat. 802, and assault with intent to commit murder in violation of Article of War 93, 41 Stat. 805.* The general court-martial sentenced him to be dishonorably discharged from the service, to forfeit all pay and allowances due or to become due and to be confined at hard labor for twenty-one years. The reviewing authority approved the sentence, but reduced the period of confinement to ten years. The sentence, as reduced, was approved upon review and Lee was dishonorably discharged from the Army on May 1, 1947.

On October 4, 1951, while an inmate of the United States Disciplinary Barracks, Fort Leavenworth, Kansas, under the foregoing court-martial sentence, Lee was again tried by a general court-martial. He was convicted of behaving while a military prisoner with disrespect toward his superior officer in violation of Article 89 of the Uniform Code of Military Justice, 64 Stat. 135, 50 U.S.C.A. § 683, and of offering violence against his superior officer in violation of Article 90 of that Code, 64 Stat. 135, 50 U.S.C.A. § 684. The general court-martial sentenced Lee to be confined at hard labor for six months. The sentence was approved and ordered executed.

The district court's holding that Lee's second sentence began to run on October 4, 1951, the date it was adjudged, and ran concurrently with the pre-existing sentence is based upon Article 57(b) of the Uniform Code of Military Justice, 64 Stat. 126, 50 U.S.C.A. § 638, which provides:

"(b)  Any period of confinement included in a sentence of a court-martial shall begin to run from the date the sentence is adjudged by the court-martial, but periods during which the sentence to confinement is suspended shall be excluded in computing the service of the term of confinement."

Appellant contends that that section did not abolish the rule that sentences to confinement imposed by different courts-martial must be served independently, and that, in any event, this case is governed by the provisions of Army

* Now 50 U.S.C.A. §§ 689, 713.

Regulations specifically designed in the light of Article 57(b), and promulgated to govern such a situation. Subparagraph 3b(1), Army Regulations 600–340, dated May 22, 1951, effective May 31, 1951.[1] The district court held that the Secretary of the Army had no authority to promulgate that Regulation.

■ Courts-martial are established under the constitutional power of Congress to make rules for the government and regulation of the Armed Forces of the United States. Article I, Sec. 8, Clause 14 of the Constitution. They are entirely separate and independent from the federal courts vested with the judicial power of the United States established under Article III of the Constitution. Dynes v. Hoover, 20 How. 65, 61 U.S. 65, 78, 79, 15 L.Ed. 838; Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 97 L.Ed. 1508; Altmayer v. Sanford, 5 Cir., 148 F.2d 161, 162.

■ The common law rule was well established that two or more sentences to imprisonment ordinarily run concurrently where there is no provision in the judgment to the contrary and in the absence of contrary statutes.[2] Zerbst v. Lyman, 5 Cir., 255 F. 609, 5 A.L.R. 377 and annotation at 5 A.L.R. 380; Zerbst v. Kidwell, 5 Cir., 92 F.2d 756, certiorari

granted 303 U.S. 632, 58 S.Ct. 757, 82 L.Ed. 1092, reversed on other grounds 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399; Buie v. King, 8 Cir., 137 F.2d 495, 499, 500; Mills v. Hunter, 10 Cir., 204 F.2d 468, 470; 24 C.J.S., Criminal Law, § 1996, p. 1236.

■■ In military court-martial proceedings, however, concurrent sentences have never been recognized. As said by the United States Court of Military Appeals in a case decided on July 3, 1952:

"The concurrent sentence, in the sense in which that device is utilized in the administration of criminal law in the civilian community, is entirely without precedent in military procedure. See Manual for Courts-Martial, supra, paragraphs 76, 125, 126, 127. Under military law a single inclusive sentence is imposed—the sum of individual punitive actions deemed legal and adequate—regardless of the number or character of the offenses of which the accused has been convicted. It will be obvious that a rule which has its basis in a concurrent sentence situation is not an appropriate subject for importation into a system in which the instrument lying at the basis of the principle is unknown,

---

1. "b. Multiple Sentences.
    "(1) When a prisoner serving a sentence to confinement adjudged by a court-martial on or after 31 May 1951 is convicted by a court-martial for another offense and sentenced to a term of confinement, the subsequent sentence, upon being ordered into execution, will begin to run as of the date adjudged and will interrupt the running of the prior sentence. After the subsequent sentence has been fully executed, the prisoner will resume the service of any unremitted interrupted sentence to confinement. In determining priority of sentences within the meaning of this paragraph if the sentence was adjudged before 31 May 1951, the date the sentence was ordered executed will be used; if the sentence was adjudged on or after 31 May 1951, the date the sentence was adjudged will be used. When the suspension of a sentence is vacated, the unexecuted portion of the sentence to confinement will begin to run on the date the

vacation of the suspension becomes effective, and the execution thereof will interrupt the running of any other sentence to confinement which the prisoner may be serving at the time.
    "(2) In those cases only in which one or more of the sentences are adjudged prior to 31 May 1951, the following provisions also will apply:
         *         *         *         *         *
    "(2) (d) A prisoner in confinement under a sentence including discharge, whether or not the discharge is suspended, who received a subsequent sentence or sentences to confinement, adjudged on or after 31 May 1951, will, subject to any limitation as to the designation of the place of confinement, serve all of the sentences in the manner prescribed in b(1) above."

2. 18 U.S.C.A. § 3568 is not contrary to that common law rule, though it did not deprive the court of power to impose consecutive sentences. Dockery v. Hiatt, 5 Cir., 197 F.2d 333.

and a unitary sentence is always assessed." United States v. Keith, 4 C.M.R. 34, 40.

See also Carter v. McClaughry, 183 U.S. 365, 393, 22 S.Ct. 181, 46 L.Ed. 236; Rose v. Roberts, 2 Cir., 99 F. 948, 950; Mosher v. Hudspeth, 10 Cir., 123 F.2d 401, 402; Winthrop, Military Law & Precedents, 1920 reprint, p. 404.

If Article 57(b) of the Uniform Code of Military Justice envisioned so drastic a change in the system of military law as to provide that successive military sentences would in future run concurrently, it would seem that such purpose would have been alluded to in the voluminous hearings which accompanied enactment of the Uniform Code. No such purpose appears in the legislative history of the Act. Instead, it would seem that that article was devised simply to insure that prisoners receive credit for time served in confinement after sentence, while the record of trial is undergoing review as provided by the Code.[3]

At common law a prisoner has a right to serve his sentence continuously, and cannot be required to serve it in installments, but even at common law a continuous sentence may be interrupted by some fault of the prisoner. White v. Pearlman, 10 Cir., 42 F.2d 788, 789; Albori v. United States, 9 Cir., 67 F.2d 4, 7; State ex rel. Libtz v. Coleman, 149 Fla. 28, 5 So.2d 60, 61; 24 C.J.S., Criminal Law, § 1995, p. 1225.

Certainly, Article 57(b) did not provide any unconditional right of a prisoner to serve a continuous sentence. This fact is demonstrated by the provision in Article 57(b) itself that "periods during which a sentence to confinement is suspended shall be excluded in computing the service of the term of confinement." Furthermore, interruption of sentences is expressly provided for by

Article 14 of the Code, 64 Stat. 112, 50 U.S.C.A. § 568, which governs delivery of offenders to civil authorities under certain circumstances. Paragraph (b) of that article requires that:

"When delivery under this section is made to any civil authority of a person undergoing sentence of a court-martial, such delivery, if followed by conviction in a civil tribunal, shall be held to interrupt the execution of the sentence of the court-martial, and the offender after having answered to the civil authorities for his offense shall, upon the request of competent military authority, be returned to military custody for the completion of the said court-martial sentence."

The desirability of having uniform rules with respect to this matter, without regard to whether the later sentence is imposed by military or civil authority, was recognized by officials of the Armed Forces. Accordingly, before the effective date of the Uniform Code of Military Justice, May 31, 1951, the Secretaries of the Army, Navy and Air Force promulgated regulations making the rule of Article 14(b) applicable to prisoners in service confinement facilities who receive subsequent sentences to confinement.

It has long been the law that military prisoners are subject to military law and trial by court-martial. Kahn v. Anderson, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469; Mosher v. Hunter, 10 Cir., 143 F.2d 745. Speaking on this point, the Supreme Court has said:

"The accused was proceeded against as an officer of the army, and jurisdiction attached in respect of him as such, which included not only the power to hear and determine the case, but the power to execute and enforce the sentence of

---

3. "Subdivision (b) requires a sentence of confinement to begin to run on the date that it is adjudged even though the accused is not actually in confinement, unless the sentence is suspended." 2 U.S.

Code Congressional Service, 81st Congress 1950, p. 2249, copied from Senate Report No. 486, June 10, 1949, to accompany H.R. 4080.

the law. Having been sentenced, his status was that of a military prisoner held by the authority of the United States as an offender against its laws.

"He was a military prisoner though he had ceased to be a soldier; and for offenses committed during his confinement he was liable to trial and punishment by court-martial under the rules and articles of war." Carter v. McClaughry, 183 U.S. 365, 383, 22 S.Ct. 181, 188, 46 L.Ed. 236.

The authority to try military prisoners is preserved to the armed forces by the Uniform Code of Military Justice, although it now is apparently restricted to prisoners actually in military custody. Article 2 of that Code, 64 Stat. 109, 50 U.S.C.A. § 552, enumerates the various classes of persons subject to the Code, including: "(7) All persons in custody of the armed forces serving a sentence imposed by a court-martial." See also Article 58 of the Code, 64 Stat. 126, 50 U.S.C.A. § 639.

The authority of the armed forces to try military prisoners having been thus reaffirmed, it cannot be seriously contended that by Article 57(b) of the same Code Congress took away the power to carry out the resulting sentences. Instead, appellee makes the more reasonable contention that,

"the Secretary of the Department or someone designated by him should have directed the suspension of the second sentence until service of the first sentence was completed; otherwise, service of such sentences would be concurrent by operation of law",

and among other statutes and pertinent regulations, appellee points to 50 U.S.C.A. § 661, Art. 74(a), providing as follows:

"(a) The Secretary of the Department and, when designated by him, any Under Secretary, Assistant Secretary, Judge Advocate General, or commanding officer may remit or suspend any part or amount of the unexecuted portion of any sentence, including all uncollected forfeitures, other than a sentence approved by the President."

That very concession, however, poses the next logical query, namely, whether, having authority to suspend sentences, the Secretary may exercise that authority through a regulation of general application.

The Secretary is the organ of the President, who in turn is Commander in Chief of the Army and Navy of the United States. Constitution, Article II, Sec. 2, Clause 1. Congress has power "to make Rules for the Government and Regulation of the land and naval Forces." Constitution, Article I, Sec. 8, Clause 14. When not in conflict with any Act of Congress, the power of the executive to establish rules and regulations for the government of the Army has never been doubted. United States v. Eliason, 16 Pet. 291, 302, 41 U.S. 291, 302, 10 L.Ed. 968. That power is confirmed by the statute vesting in the head of each department authority to prescribe regulations, not inconsistent with law, for the government of his department. 5 U.S.C. § 22, R.S. § 161.

In speaking of the power, under that statute, of the Secretary of the Treasury to prescribe regulations, the Supreme Court has said that,

"In determining whether the regulations promulgated by him are consistent with law, we must apply the rule of decision which controls when an act of Congress is assailed as not being within the powers conferred upon it by the Constitution; that is to say, a regulation adopted under § 161 of the Revised Statutes should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Those who insist that such a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Sec-

retary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress." Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 705, 44 L.Ed. 846. See also Fussell v. United States, 5 Cir., 100 F.2d 995, 996; Carter v. Forrestal, 85 U.S.App.D.C. 53, 175 F.2d 364, 366; United States v. Obermeier, 2 Cir., 186 F.2d 243, 247.

 It is clear that the Army Regulation does not increase the punishment for the earlier offense, and has no ex post facto effect. Calder v. Bull, 3 Dall. 386, 389, 1 L.Ed. 648, 3 U.S. 386, 389. We conclude that the Secretary of the Army did not exceed his authority in promulgating subparagraphs 3b(1) and 3b(2) (d) of Army Regulations 600–340, May 22, 1951. The judgment is, therefore, reversed and the cause remanded for the entry of appropriate judgment. See 28 U.S.C.A. § 2106.

Reversed.

HUTCHESON, Chief Judge, dissents.

HUTCHESON, Chief Judge (dissenting).

Of the opinion that the district judge was right in his view that the purpose and effect of Article 57(b) of the Uniform Code of Military Justice, 64 Stat. 126, 50 U.S.C.A. § 638, was to abolish the rule that sentences to confinement imposed by different courts martial may not be served concurrently but must be served independently, and that the provisions of Army Regulation, Sub-paragraph 3(b) (1) Army Regulation 600–340 were an abortive attempt to nullify the statute, I respectfully dissent from the opinion and conclusion of the majority that the judgment was wrong and must be reversed.

I, of course, agree that the Secretary of the Department or someone designated by him could, by an act of judgment in the particular case, have suspended the first or second sentence. I cannot agree that the exercise of judgment re-

quired in each such case can be dispensed with and the whole purpose and effect of the amendatory provision brought to naught by what in effect amounts to a secretarial proclamation thwarting the purpose of the section and preventing its effective operation.

I respectfully dissent.

On Petition for Rehearing

PER CURIAM.

Neither of the judges who concurred in the original decision thinks that a rehearing should be granted. See Rule 29 of this Court. The petition for rehearing is therefore

Denied.