In re LANGAN. In re SECKLER. In re DEPP. In re CARRIER.

(Circuit Court, E. D. Missouri. June 3, 1903.)

1. COURTS-MARTIAL—LEGALITY OF SENTENCE—IMPRISONMENT AT HARD LABOR.
    The word "imprisonment," as used in the sixtieth article of war [U.
    S. Comp. St. 1901, p. 956], was not employed in a technical sense to sig-
    nify imprisonment at a military post without hard labor, but has a
    broader signification, and empowers a court-martial to sentence a per-
    son in the military service to imprisonment at hard labor, or to a pen-
    itentiary where hard labor is a part of the discipline, where the offense
    of which he is convicted is one for which the civil tribunals could im-
    pose a like sentence.

In Chambers. On writs of habeas corpus and returns thereto.

B. F. Babbitt, for petitioners.
John S. Dean, U. S. Atty., for respondent.

Before THAYER, Circuit Judge.

THAYER, Circuit Judge. Petitions for writs of habeas corpus
were heretofore presented to me at chambers by the above-named
petitioners, to wit, George R. Langan, Robert H. Seckler, James R.
Depp, and Fred J. Carrier, alleging, in substance, that they were un-
lawfully restrained of their liberty by Robert W. McClaughry, warden
of the United States Penitentiary at Ft. Leavenworth, and consenting
that, if writs were awarded, the respective petitioners' right to a dis-
charge from confinement might be determined on the return to the
several writs which might be made by the warden of the penitentiary
without the production of the bodies of the petitioners. Writs were
accordingly issued, in favor of each of the petitioners, commanding
the warden to show by what authority the petitioners were restrained
of their liberty. The warden has made a return thereto, showing the
proceedings of the several courts-martial before whom the petitioners
were tried and the sentences imposed. Such returns having been filed,
the petitioners, by their counsel, moved for a discharge without taking
issue with any of the facts stated in the several returns.

It appears, from the returns made in the several cases: That George
R. Langan was tried before a court-martial duly convened by an order
emanating from headquarters of the Department of Colorado for
embezzlement, in violation of the sixtieth article of war [U. S. Comp.
St. 1901, p. 956]; the crime specified consisting in making way with
and converting to his own use 1,000 gallons of mineral oil, the property
of the United States, of the value of $148.90; that he pleaded not guilty,
was duly tried and found guilty, and sentenced "to be dishonorably
discharged from the service of the United States, forfeiting all pay and
allowances due him, and to be confined at hard labor in such peniten-
tiary as the reviewing authority may direct for four years"—which
finding and sentence were duly approved on January 27, 1902, by the
commanding general of the department, who designated the United
States Penitentiary at Ft. Leavenworth as the place of confinement.
That Robert H. Seckler was tried before a court-martial duly convened
by an order emanating from headquarters of the Department of
Colorado for a violation of the sixtieth article of war, the specification

being that he had feloniously taken, stolen, and carried away 1,000 gallons of mineral oil, of the value of $148.90, the same being the property of the United States; that he was found guilty of the charge on a plea of guilty, and was likewise sentenced to be "dishonorably discharged, * * * and be confined at hard labor in such penitentiary as the reviewing authority may direct for three years"—which sentence was approved on January 27, 1902, by the commanding officer of the department, who likewise designated the United States Penitentiary at Ft. Leavenworth, Kan., as the place of confinement. That the petitioner James R. Depp was tried before a military court-martial convened by an order emanating from headquarters of the Department of the Lakes upon the charge of larceny, in violation of the sixtieth article of war, the offense consisting of stealing property of the United States, of a value in excess of $200, to which charge the petitioner pleaded guilty, and was sentenced "to be dishonorably discharged from the service of the United States, * * * and be confined at hard labor in such penitentiary as the reviewing authority may direct, for the term of two years"—which sentence was duly approved by the commanding officer of the department on October 29, 1901, who designated the United States Penitentiary at Ft. Leavenworth as the place of confinement. That the petitioner Fred J. Carrier was tried before a court-martial duly convened by an order emanating from headquarters of the Department of Dakota for larceny, in violation of the sixtieth article of war, the offense specified consisting in feloniously taking, stealing, and carrying away 33 sacks of oats belonging to the United States, of the value of $59; that the accused pleaded not guilty, but was found guilty, and likewise sentenced to be "dishonorably discharged from the service of the United States, * * * and be confined at hard labor at such penitentiary as the reviewing authority may direct for the period of three years and six months"—which sentence was duly approved by the commanding officer of the Department of Dakota on December 25, 1901, who designated the United States Penitentiary at Ft. Leavenworth as the place of confinement.

It is claimed in behalf of the petitioners that the several sentences aforesaid are wholly void, because the punitory clause of the sixtieth article of war, under which the petitioners were tried, convicted, and sentenced, does not authorize imprisonment at hard labor, and hence that the several sentences to be confined at hard labor, or in a penitentiary where hard labor is a part of the discipline, was beyond the power of the several courts-martial to impose, and that the detention of the prisoners is therefore unlawful. This is the sole ground on which the petitioners base their right to a discharge. The sixtieth article of war declares, in substance, that persons convicted of the various offenses denounced by that article "shall * * * be punished by fine or imprisonment or by such other punishment as a court-martial may adjudge," and it is insisted that the word "imprisonment," as thus used, must be understood to mean simply "imprisonment at a military post," as distinguished from "imprisonment at hard labor," or in a penitentiary where hard labor is a part of the discipline. It is urged that, in enforcing the criminal law, statutes should always be

construed in mitiori sensu, and that in accordance with this principle, where a statute simply declares that for the doing of a given act the offender shall be imprisoned, it does not mean that he shall be imprisoned at hard labor. For several reasons I have been forced to conclude that the view contended for by the petitioners is untenable.

If the petitioners had been tried before a civil tribunal for the offenses by them committed, to wit, embezzlement and larceny of government property, they would have been subject to imprisonment "at hard labor for not less than one nor more than five years or fined not less than $1,000 nor more than $5,000." Rev. St. §§ 5438, 5439 [U. S. Comp. St. 1901, pp. 3674, 3675]. Now by the ninety-seventh article of war [U. S. Comp. St. 1901, p. 967] Congress has fairly indicated its will that soldiers tried by military tribunals shall undergo substantially the same punishment as civilians when tried for like offenses before civil tribunals. That article provides that:

"No person in the military service shall, under the sentence of a court-martial, be punished by confinement in a penitentiary, unless the offense of which he may be convicted would, by some statute of the United States, or by some statute of the state, territory, or district in which such offense may be committed, or by the common law, as the same exists in such state, territory, or district, subject such convict to such punishment."

It is not probable that Congress intended to prescribe a different penalty for the theft or embezzlement of government property, depending upon the tribunal before whom the accused happened to be tried. No reason is perceived why the sentence in one case should be less severe than in the other. The offense of stealing government property, or embezzling, is quite as heinous when committed by a person in the military service as when committed by a civilian. It is not believed, therefore, that the mere omission of the words "hard labor," in the sixtieth article of war, is any evidence of a design not to subject persons in the military service to imprisonment at hard labor, provided they commit offenses which would subject them to such punishment if they happened to be tried before a civil tribunal. It is more reasonable to infer that the word "imprisonment," as used in the sixtieth article of war, was used in a generic sense, so as to include both species of imprisonment; that is to say, either with or without hard labor.

The foregoing view, that the sixtieth article of war empowers a court-martial to sentence a person to imprisonment at hard labor, or to a penitentiary where hard labor is a part of the discipline, when the offense of which he is convicted is of such a nature that he might have been thus sentenced by a civil tribunal, seems to have been approved by the Circuit Court of Appeals for the Second Circuit and by the United States Supreme Court in Rose v. Roberts, 99 Fed. 948, 40 C. C. A. 199, and in Carter v. McClaughry, 183 U. S. 365, 22 Sup. Ct. 181, 46 L. Ed. 236. These were cases where persons in the military service were tried, convicted, and sentenced to imprisonment at hard labor for offenses denounced by the sixtieth article of war, and the convictions in this respect passed unchallenged in both of the appellate tribunals. Moreover, it was held in substance, in Re Mills, 135 U. S. 263, 267, 10 Sup. Ct. 762, 34 L. Ed. 107, that where by

statute an offense is punishable by imprisonment simply, the words "at hard labor" being omitted, it is competent for a federal court to sentence the accused to a penitentiary where hard labor is a part of the discipline, when the statute permits the accused to be imprisoned for a longer period than a year and such longer period of imprisonment is imposed.

I am accordingly of opinion that the word "imprisonment," as used in the sixtieth article of war, was not employed in a technical sense to_ signify imprisonment at a military post without hard labor, but that it has a broader signification, and empowers a court-martial to inflict punishment at hard labor if the offense is one for which the civil tribunals could impose a like sentence. This is the construction which the sixtieth article of war has received at the hands of the executive branch of the government, and the fact that it has received such construction for a period of years, and that it has been acquiesced in, is entitled to much weight.

The result is that the several convictions must be held to be lawful, and the writs of habeas corpus must be discharged. It is so ordered.