**In re BRODIE. In re COFFEY. In re HANSHEW. In re MORRIS.**

(Circuit Court of Appeals, Eighth Circuit. March 4, 1904.)

Nos. 36, 37, 38, 39.

1. ARMY REGULATIONS—ESTABLISHMENT—ACTS OF SECRETARY OF WAR.

Rules and orders promulgated by the Secretary of War for the government of the army are presumed to be issued by the Secretary with the approbation and under the direction of the President, as commander in chief, though they do not expressly so state.

2. SAME—EFFECT.

Army Regulations, par. 940, providing that, when the sentence of a court-martial prescribes imprisonment, the court shall state therein whether the prisoner shall be confined in a penitentiary or at a post, being guided in its determination by the ninety-seventh article of war (Rev. St. p. 239 [U. S. Comp. St. 1901, p. 967]), is not a statute, but a rule or regulation promulgated by the Secretary of War under authority of the president, and therefore subject to modification by the same authority.

3. SAME—COURT-MARTIAL MANUAL—PROVISIONS—EFFECT.

Court-Martial Manual 1895, promulgated by the Secretary of War, and directing in a footnote: "Unless the laws of the state, territory, etc., in which the court-martial is convened, are at hand, it is impossible for the court to determine in all cases whether or not, under the ninety-seventh article of war, the offender is punishable by a penitentiary confinement. Therefore, in case of any doubt, the words 'in such place as the reviewing authority may direct' will be used in the sentence"—which direction was repeated in like manuals issued by the Secretary of War in 1898 and 1901, operated to qualify Army Regulations, § 940, before named.

4. SAME—FOOTNOTES.

A footnote to a rule or regulation is not less authoritative than the principal text, where the language of the footnote and the general character of the principal text point to a single authorship, and an intention that the footnote shall command respect and obedience in like manner as the body of the rule or regulation.

5. SAME—PROMULGATION.

Where an order of the Secretary of War promulgating army regulations stated that they were published by the direction of the President for the "government" of all concerned, and an order promulgating the manual for courts-martial, made no reference to the president, but stated that the manual was published for the "information and guidance" of all concerned, in legal contemplation the two orders spoke by the same authority, and were of equal dignity.

6. SAME—COURTS-MARTIAL—JURISDICTION—COLLATERAL ATTACK.

Whether, within the meaning of Army Regulations, § 940, as qualified by the footnote in the court-martial manual before named, the local law is impossible of ascertainment by the court-martial, is a question for that court to determine, and, where the form of the sentence resolves that question in the affirmative, such sentence is conclusive upon that matter and not open to collateral attack.

## On Petitions for Writs of Habeas Corpus.

In response to writs of habeas corpus issued upon the respective petitions of Edward M. Brodie, James F. Coffey, Andrew C. Hanshew, and John H. Morris, the warden of the United States penitentiary at Fort Leavenworth, Kan., made returns showing that the petitioners were held in confinement in that penitentiary under approved sentences of military courts-martial. From these returns, upon which no issue of fact has been taken, it appears: Brodie and Coffey, privates in the Third Cavalry, were tried February 1, 1901, before a general court-martial, at San Fernando de la Union, Luzon, P. I., upon

a charge of murder, under the fifty-eighth article of war, alleged to have been committed by them jointly in the Philippine Islands, in time of insurrection, and within territory occupied by the armed forces of the United States. Each was found guilty, and sentenced "to be confined at hard labor at such place as the reviewing authority may direct for the term of his natural life." The finding and sentence were approved February 18, 1901, by the department commander, Maj. Gen. Wheaton, who ordered the court, and the Bilibid prison, Manilla, P. I., was designated by him as the place of confinement. After being confined for a time in this prison, Brodie and Coffey were transferred, under paragraph 946 of the army regulations of 1895 (paragraph 1047, regulations of 1901), to the Ft. Leavenworth Penitentiary, for the completion of their sentences. Hanshew, a musician in the Coast Artillery, was tried December 19, 1901, before a general court-martial at Fort Screven, Ga., upon a charge of attempt to commit rape. He was found guilty, and sentenced "to be confined at hard labor at such place as the reviewing authority may direct for twelve years." The finding and sentence were approved January 6, 1902, by the department commander, Maj. Gen. Brooke, who ordered the court, and the Ft. Leavenworth penitentiary was designated by him as the place of confinement. Morris, a private in the Ninth Cavalry, was tried September, 24, 1900, before a general court-martial at Ft. Grant, Ariz., upon charges of desertion and larceny. He was found guilty, and sentenced "to be confined at hard labor at such post or penitentiary as the reviewing authority may direct for four years." The finding and sentence were approved October 16, 1900, by the department commander, Brig. Gen. Merriam, who ordered the court, and the Ft. Leavenworth Penitentiary was designated by him as the place of confinement.

Byron F. Babbitt, for petitioners.

John S. Dean, U. S. Atty., and John Biddle Porter, for respondent.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the cases as above, delivered the opinion of the court.

But a single question is presented in each of these cases: Is the sentence of the court-martial void because, instead of prescribing the character of the confinement—whether at a military post or in a penitentiary—it leaves the determination of that matter to the reviewing authority? The question is solved by a careful consideration of pertinent provisions of the articles of war and of the army regulations. The ninety-seventh article of war (Rev. St. p. 239, 1 U. S. Comp. St. 1901, p. 967) declares:

"No person in the military service shall, under the sentence of a court-martial, be punished by confinement in a penitentiary, unless the offense of which he may be convicted would, by some statute of the United States, or by some statute of the state, territory, or district in which such offense may be committed, or by the common law, as the same exists in such state, territory, or district, subject such convict to such punishment."

This article does not require any offender to undergo confinement in a penitentiary, but merely restricts that character of punishment, under military law, to those cases where it could be imposed if the conviction were in the civil courts. Ex parte Mason, 105 U. S. 696, 700, 26 L. Ed. 1213. The insistence of petitioners is not that the offenses of which they have been severally found guilty are not punishable, upon conviction in a civil court, by imprisonment in a penitentiary, but that under the military law there is a discretion to punish the com-

mission of these offenses by imprisonment at a military post or by imprisonment in a penitentiary; that these punishments are essentially different in character, the latter being greater and more odious; and that the discretion to choose between them, or to determine which shall be imposed, is lodged in the court-martial, and cannot be left by that body to the reviewing authority. The fifty-eighth article of war (Rev. St. p. 235, 1 U. S. Comp. St. p. 955) directs:

"In time of war, insurrection, or rebellion, larceny, robbery, burglary, arson, mayhem, manslaughter, murder, assault, and battery with an intent to kill, wounding, by shooting or stabbing, with an intent to commit murder, rape or assault and battery with an intent to commit rape, shall be punishable by the sentence of a general court martial, when committed by persons in the military service of the United States, and the punishment in any such case shall not be less than the punishment provided, for the like offense, by the laws of the state, territory, or district in which such offense may have been committed."

If read and considered in the light of the law of the place where their offense was committed, it is possible or probable that under this article, and by reason of the conditions existing in the Philippines at the time, the sentences of Brodie and Coffey impose confinement in a penitentiary, and leave to the reviewing authority no discretion as to whether the place of confinement shall be a military post or a penitentiary, but only a duty, upon approval of the sentences, to designate the particular penitentiary in which the convicts shall be confined—a matter which, by paragraphs 941 and 946 of the army regulations of 1895 (paragraphs 1042 and 1047, regulations of 1901), rests in the department commander or higher authority. Counsel for the respondent have not brought to our notice the local laws applicable under the fifty-eighth article. Petitioners have presented their cases as if that article affected none of them, and the conclusion at which we arrive upon the principal question renders it unnecessary for us to consider any other.

The contention of petitioners is based upon paragraph 940 of the army regulations of 1895 (paragraph 1040, regulations of 1901), which says:

"When the sentence of a court-martial prescribes imprisonment, the court will state therein whether the prisoner shall be confined in a penitentiary or at a post, being guided in its determination by the 97th article of war."

If this be the entire military law upon the subject, there can be no doubt that a court-martial, in imposing imprisonment as a punishment, where there is a discretion to say whether it shall be at a military post or in a penitentiary, is required to designate or prescribe in the sentence the character of the imprisonment in this respect. But we think there is another regulation upon the subject which modifies paragraph 940, and excepts these cases from what would otherwise be its plain requirement.

Before pointing out the other and modifying regulation, some prefatory observations may properly be made. The law governing courts-martial is found in the statutory enactments of Congress—particularly in the articles of war, in regulations prescribed by executive authority, and in military usage and procedure. Carter v. McClaughry, 183 U.

S. 365, 386, 22 Sup. Ct. 181, 46 L. Ed. 236. Subject to the Constitution and to the laws of Congress, the President, as commander in chief, is authorized to establish and enforce such rules and regulations for the government of the army as he may deem essential to the maintenance of a high standard of efficiency, discipline, and honor, and, as a means to this end, may properly provide for the trial of accusations against persons in the military service, and for the punishment of offenses by them. "The power to establish implies necessarily the power to modify or repeal, or to create anew. The Secretary of War is the regular constitutional organ of the President, for the administration of the military establishment of the nation; and rules and orders publicly promulgated through him must be received as the acts of the executive, and, as such, be binding upon all within the sphere of his legal and constitutional authority. Such regulations cannot be questioned or denied because they may be thought unwise or mistaken." United States v. Eliason, 16 Pet. 291, 301, 10 L. Ed. 968; Kurtz v. Moffitt, 115 U. S. 487, 503, 6 Sup. Ct. 148, 29 L. Ed. 458. Nor is it necessary for the Secretary of War in promulgating such rules or orders to state that they emanate from the President, for the presumption is that the secretary is acting with the President's approbation and under his direction. Parker v. United States, 1 Pet. 293, 297, 7 L. Ed. 150; Wilcox v. Jackson, 13 Pet. 498, 512, 10 L. Ed. 264; Williams v. United States, 1 How. 290, 11 L. Ed. 135; United States v. Freeman, 3 How. 556, 566, 11 L. Ed. 724; Confiscation Cases, 20 Wall. 92, 109, 22 L. Ed. 320; United States v. Farden, 99 U. S. 10, 19, 25 L. Ed. 267; Wolsey v. Chapman, 101 U. S. 755, 769, 25 L. Ed. 915; United States v. Fletcher, 148 U. S. 84, 89, 13 Sup. Ct. 552, 37 L. Ed. 378; 7 Op. Attys. Gen. 453.

In the absence of some statutory provision to the contrary, it is established law in England and in this country that in criminal cases the court determines what, within the limits fixed by law, shall be the quantum and character of the punishment. In other words, the question is not necessarily to be determined by the triers of fact. 1 Bishop, New Cr. L. § 394. While a court-martial cannot be altogether likened unto a civil court, in which the guilt of the accused is to be pronounced by a jury, under the supervision of a judge, and the penalty is to be fixed by the judge within the prescribed limits, it is yet true that a court-martial acts only in response to the call of a superior authority, and that the result of its deliberations is somewhat in the nature of a recommendation to that authority (1 Winthrop, Mil. Law, 632; Davis, Mil. Law, 15), is without effect unless approved by it, and until then is interlocutory and inchoate only (Runkle v. United States, 122 U. S. 543, 555, 7 Sup. Ct. 1141, 30 L. Ed. 1167; Mills v. Martin, 19 Johns. 7, 30). The superior authority which orders a court-martial, and to which its conclusion must be submitted for approval or disapproval, is spoken of as the reviewing authority. Its action being indispensable to a final conclusion or judgment, the reviewing authority is an essential component of the original tribunal, and is not entirely a court of errors. There is therefore nothing in the character of a court-martial which inherently precludes committing to the reviewing authority the determination of the character of imprisonment to be imposed within the

prescribed limits. No statute is cited, and we know of none, which makes it the duty of the court-martial, when there is a discretion to be exercised, to say whether the imprisonment shall be at a military post or in a penitentiary, and which thereby prevents the adoption of a rule or regulation committing the matter to the reviewing authority for determination. Paragraph 940 of the army regulations before quoted is a rule or regulation promulgated by the Secretary of War under authority of the President, and is not a statute. As has been shown, it was subject to modification by the authority which made it, and its modification would be competently effected and shown by the promulgation of a new or different rule or regulation upon the subject by the Secretary of War, acting under the presumed approbation and direction of the President. We think such a modification was effected and is shown by the following order or direction in the manual for courts-martial issued by the Secretary of War in 1895, and repeated in like manuals issued by him in 1898 and 1901:

"Unless the laws of the state, territory, etc., in which the court is convened, are at hand, it is impossible for the court to determine in all cases whether or not, under the 97th A. W. [article of war], the offender is punishable by penitentiary confinement. Therefore, in case of any doubt, the words 'in such place as the reviewing authority may direct,' will be used in the sentence."

This operated to ingraft upon paragraph 940 of the army regulations a proviso to the effect that where imprisonment is prescribed by the sentence, and it is impossible for the court-martial to ascertain whether, under the local law, the offense may be punished by imprisonment in a penitentiary, the court shall leave the determination of the character of the confinement—whether at a military post or in a penitentiary—to the reviewing authority. The sentences now under consideration conformed to this direction, and, as completed by the reviewing authority, fully comply with the requirement of paragraph 940, as modified.

Counsel for the petitioners earnestly insists that the order or direction in the manual for courts-martial should be entirely disregarded, for two reasons: First, that it is a mere footnote, and not a part of the text; second, that the manual is simply a suggestion as to procedure under military law prepared by the Judge Advocate General for the "information and guidance" of courts-martial, and approved by the Secretary of War, without the approbation or direction of the President, and that therefore it cannot affect a regulation issued by direction of the President for the "government" of the army. While this insistence of counsel has been very forcefully presented, there are several considerations which preclude its adoption by us.

The order or direction is in a footnote to the manual, but an addendum or postscript to a written communication is not for that reason less authoritative than the principal text, if, upon a view of both, they appear to speak a single voice and to be a single communication. The language of this note and the general character of the manual point to a single authorship, and an intention that the note shall command respect and obedience in like manner as the body of the manual. The authorship and obligatory character of the note are also indicated by the declaration in paragraph 1552 of the army regulations of 1895 (paragraph 1761, regulations 1901) that "the standard blank forms used

in army administration, with the notes and directions thereon, have the force and effect of army regulations. * * * All notes or directions on these blanks will, prior to their issue, be approved by the Secretary of War." While this note is not upon a blank form, it is in a standard publication of the War Department, and appears under a portion of the text which prescribes the manner of indicating the character of imprisonment imposed by the sentence of a court-martial. The note is clearly a part of the manual, and intended to have the same force and effect as the principal text.

It is true that in the order promulgating the army regulations the Secretary of War states that they are published by direction of the President for the "government" of all concerned, and that in the order promulgating the manual for courts-martial the Secretary of War makes no reference to the President, but states that the manual is published for the "information and guidance" of all concerned. The difference is one of words only. In legal contemplation, the two orders speak by the same authority, and the relation of that authority to those whose conduct is intended to be affected makes what is said a command in each instance. An officer or soldier would see no difference between being governed by a stated regulation issued by his superior, and being guided by such a regulation. Both orders are signed by the Secretary of War, and neither by the President. Both depend upon the character of the act done, and the authority of the Secretary to represent and speak for the President, rather than upon the presence or absence of any direct statement of the President's approbation of the Secretary's action. The express statement of the Secretary in one order that he acts at the President's direction is not stronger than the implied statement to the same effect in the other, because the authority of the Secretary of War to speak at all, in respect of the matters covered by the army regulations, or those covered by the manual, depends upon the fact that he represents and speaks for the President. Repeated decisions of the Supreme Court, and superior reason as well, forbid any presumption that the Secretary of War, in publishing the manual, acted without the approbation or direction of the President, and intended, independently of the President's will, to inform courts-martial that paragraph 940 of the army regulations, published for their government at the President's direction, could be disregarded, and to guide them to an incomplete and wrongful discharge of official duty. Yet that would clearly be the effect of acceding to the claimed difference between the authority of the army regulations and that of the manual for courts-martial. The rational presumption, and the one which is sustained by judicial precedents, is that in publishing to the army the manual for courts-martial of 1895, and in republishing it in 1898 and 1901, the Secretary of War was not assuming a power which he did not possess, or to act without the approbation or direction of the President, but, as the recognized and legitimate organ of the President, was expressing his competent direction or order in a matter affecting the administration and government of the army. United States v. Eliason, 16 Pet. 291, 301, 10 L. Ed. 968; United States v. Fletcher, 148 U. S. 84, 89, 13 Sup. Ct. 552, 37 L. Ed. 378. It is otherwise shown that this manual is a supplemental set of rules or regulations established under

the President's direction, and having special reference to courts-martial. As such they are deemed part of the regulations for the army. Digest Op. Judge Advocate General (Ed. 1901) pp. 747, 751. Paragraph 938 of the army regulations of 1895 (paragraph 1039, regulations of 1901), conceded to emanate from the President, directs:

"Whenever by any of the articles of war punishment is left to the direction of the court, it shall not, in time of peace, be in excess of a limit which the President may prescribe. The limits so prescribed are set forth in the manual for courts-martial, published by authority of the Secretary of War."

This is a recognition of the authoritative character of the manual.

In the case of Oberlin M. Carter, which has been before the courts several times, there was a conviction upon one charge expressly punishable by dismissal from the army, and upon two charges punishable by imprisonment either at a military post or in a penitentiary. The sentence of the court-martial, in respect of the imprisonment, was "to be confined at hard labor at such place as the proper authority may direct for five years." The President was the reviewing authority, and, upon the approval of the sentence, caused the Ft. Leavenworth penitentiary to be designated as the place of confinement. Carter v. McClaughry, 183 U. S. 365, 373, 374, 22 Sup. Ct. 181, 46 L. Ed. 236. Notwithstanding the repeated and earnest efforts of able counsel on behalf of Carter to avoid the execution of the sentence, it passed unchallenged in respect of the point presented by these petitioners. This may be entitled to only slight attention, but a fact in that case which has an important bearing upon the question now under consideration is this: A sentence pronounced and stated in conformity with the note in the manual for courts-martial was there brought directly to the attention of the President, and he exercised the discretion, reserved to the reviewing authority, of determining whether the imprisonment should be at a military post or in a penitentiary, and directed that it be in a penitentiary. That was a plain recognition of the authority of the manual and of the note.

The present cases are altogether unlike Deming v. McClaughry, 51 C. C. A. 349, 113 Fed. 639, and McClaughry v. Deming, 186 U. S. 49, 22 Sup. Ct. 786, 46 L. Ed. 1049, where a practice in the army and in the executive department which was in violation of an act of Congress was not permitted to prevail in the courts against the unambiguous terms and plain meaning of the statute. Here, no statute forbidding, it was competent for the President, through the Secretary of War, to establish the rule or regulation quoted from the manual, and the only question is whether this was done. The action of the President in the Carter Case, the action of three general officers of the army in the cases under consideration, the like action of three other general officers of the army shown in In re Langan (C. C.) 123 Fed. 132, and the knowledge of such action, and concurrence therein, of the Secretary of War and the Judge Advocate General, which are also indicated in these several cases, show that the manual for courts-martial and the note named have been so generally and uniformly recognized and given effect as parts of the regulations for the army, both by those who make and publish those regulations and by those who execute them, that any doubt or uncertainty as to the character or force of the manual or its

note ought certainly to be resolved in favor of sustaining this established practice and uniform action. United States v. Hill, 120 U. S. 169, 182, 7 Sup. Ct. 510, 30 L. Ed. 627; Deming v. McClaughry, 51 C. C. A. 349, 351, 113 Fed. 639; In re Langan (C. C.) 123 Fed. 132; United States v. Tanner, 147 U. S. 661, 663, 13 Sup. Ct. 436, 37 L. Ed. 321; Webster v. Luther, 163 U. S. 331, 342, 16 Sup. Ct. 963, 41 L. Ed. 179.

Whether, within the meaning of the rule or regulation prescribed in the manual, the local law was impossible of ascertainment by the court-martial, was in each instance a question for the court-martial to determine, and the form of their sentence shows that they resolved it in the affirmative. The presumptions in favor of official action are such as to make the sentence conclusive upon this matter, and to preclude collateral attack. In re Chapman, 166 U. S. 661, 671, 17 Sup. Ct. 677. 41 L. Ed. 1154; Carter v. McClaughry, 183 U. S. 400, 22 Sup. Ct. 181, 46 L. Ed. 236.

The sentences were lawful, and the writs of habeas corpus are discharged.