### KIRKMAN v. McCLAUGHRY, Warden.

(Circuit Court of Appeals, Eighth Circuit. March 12, 1908.)

No. 2,591.

1. ARMY AND NAVY—COURTS-MARTIAL—CUSTOMARY MILITARY LAW, RATHER THAN COMMON LAW, CONTROLS THEIR PROCEEDINGS.

In the absence of a regulatory statute, the proceedings of courts-martial are controlled by the usages and customs of the military service, otherwise called customary military law, and not by the common-law rules applicable to the proceedings of civil tribunals.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Army and Navy, §§ 89–93.]

**2. SAME—DIFFERENT SENTENCES AGAINST SAME OFFENDER REGARDED AS CUMULATIVE AND EXECUTED CONSECUTIVELY.**

The customary military law and the army regulations unite in requiring that different sentences to imprisonment imposed by courts-martial upon the same offender be regarded as cumulative and be executed consecutively, one upon the expiration of another in the order of their imposition.

**3. SAME—ARMY REGULATIONS—PARAGRAPH 981 CONSTRUED—"SOLDIERS."**

In paragraph 981 of the Army Regulations, which reads, "When soldiers awaiting result of trial or undergoing sentence commit offenses for which they are tried, the second sentence will be executed upon the expiration of the first," the word "soldiers" is used in its popular sense, and embraces officers as well as enlisted men.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, p. 6543.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Kansas.

For opinion below, see 152 Fed. 255.

George W. Kirkman, pro se.

Harry J. Bone, U. S. Atty., J. S. West, Asst. U. S. Atty., and W. G. Doane, Acting Judge Advocate, for appellee.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

VAN DEVANTER, Circuit Judge. Upon two separate trials before different courts-martial upon distinct military charges, the appellant, then a captain in the regular army, was convicted and sentenced to dismissal from the service and to confinement at hard labor for stated terms in a penitentiary. The second trial was for offenses committed during an adjournment of the first. Neither sentence had been promulgated when the other was imposed, and neither contained any reference to the other. Indeed, the eighty-fourth and eighty-fifth Articles of War make it certain that neither court-martial, when imposing sentence, knew of the result of the trial before the other. Both sentences were confirmed by the President on the same day, and were then promulgated by the same order. After undergoing the confinement prescribed in the longer of the two terms, the appellant, acting upon the theory that both began to run on the same day, sought to be released from further restraint through a writ of habeas corpus. Upon the hearing the Circuit Court ruled against that theory and discharged the writ. An appeal brings the case here.

Among the army regulations, made and published under the President's direction, are these:

"977. When the date for the commencement of a term of confinement imposed by sentence of a court-martial is not expressly fixed by the sentence, the term of confinement begins on the date of the order promulgating it. The sentence is continuous until the term expires, except when the person sentenced is absent without authority.

"978. The order promulgating the proceedings of a court and the action of the reviewing authority will, when practicable, be of the same date. When this is not practicable, the order will give the date of the action of the reviewing authority as the date of the beginning of the sentence. This does not

apply to sentences of forfeiture of all pay and allowances. A soldier awaiting result of trial will not be paid before the result is known."

"981. When soldiers awaiting result of trial or undergoing sentence commit offenses for which they are tried, the second sentence will be executed upon the expiration of the first."

While conceding that, if the second sentence had so provided, the term of confinement thereunder would have begun upon the expiration of the other term, the appellant contends that, as that sentence did not so provide, both terms began on the day when the sentences were promulgated, and, therefore, that when he had undergone confinement for the longer term he had also served the shorter one. To sustain this contention he chiefly relies upon the common-law rule, that when two or more sentences to imprisonment are imposed upon the same offender, whether for offenses charged in different indictments or in different counts of the same indictment, they are to be executed concurrently, unless it be otherwise provided therein. See 1 Bishop, New Crim. Proc. § 1311; 25 Am. & Eng. Enc. (2d Ed.) 307; Blitz v. United States, 153 U. S. 308, 317, 14 Sup. Ct. 924, 38 L. Ed. 725; Howard v. United States, 21 C. C. A. 586, 590, 75 Fed. 986, 34 L. R. A. 509; Chadwick v. United States, 72 C. C. A. 343, 365, 141 Fed. 225. But we are not here concerned with the rules which, in the absence of a regulatory statute, control the proceedings of civil tribunals, but with the usages and customs of the military service which, in the like situation, control the proceedings of courts-martial; and that this is so is shown by the following extract from the opinion in Smith v. Whitney, 116 U. S. 167, 178, 6 Sup. Ct. 570, 576, 29 L. Ed. 601.

"Of questions not depending upon the construction of the statutes, but upon unwritten military law or usage, within the jurisdiction of courts-martial, military or naval officers, from their training and experience in the service, are more competent judges than the courts of common law. This is nowhere better stated than by Mr. Justice Perry in the Supreme Court of Bombay, saying: 'And the principle of the noninterference of the courts of law with the procedure of courts-martial is clear and obvious. The ground work of the jurisdiction, and the extent of the powers of courts-martial, are to be found in the Mutiny Act and the Articles of War, and upon all questions arising upon these her Majesty's judges are competent to decide; but the Mutiny Act and Articles of War do not alone constitute the military code, for they are, for the most part, silent upon all that relates to the procedure of the military tribunals to be erected under them. Now this procedure is founded upon the usages and customs of war, upon the regulations issued by the Sovereign, and upon old practice in the army, as to all which points common-law judges have no opportunity, either from their law books or from the course of their experience, to inform themselves. It would therefore be most illogical, to say nothing of the impediments to military discipline which would thereby be interposed, to apply to the proceedings of courts-martial those rules which are applicable to another and different course of practice.' Porret's Case, Perry's Oriental Cases, 414, 419. So in Martin v. Mott, 12 Wheat. 19, 35, 6 L. Ed. 537, Mr. Justice Story, delivering the opinion of this court, said that the law by which courts-martial were bound to execute their duties and to regulate their mode of proceeding, in the absence of positive enactments, was 'the general usage of the military service, or what may not unfitly be called the customary military law.'"

Other cases also give support to this view. Carter v. McClaughry, 183 U. S. 365, 386, 22 Sup. Ct. 181, 46 L. Ed. 236; Kurtz v. Moffitt, 115 U. S. 487, 500, 504, 6 Sup. Ct. 148, 29 L. Ed. 458; Dynes v.

Hoover, 20 How. 65, 79, 82, 15 L. Ed. 838; United States v Clark (C. C.) 31 Fed. 710, 713.

Doubtless, in actual practice, many common-law rules, deemed applicable to the proceedings of courts-martial, have become incorporated into the customary military law, but nothing has been brought to our notice indicating that the rule relied upon by the appellant was deemed applicable to such proceedings in England, the home of the common law, or that it is recognized as a part of the customary military law of the United States. On the contrary, we learn from recognized sources of authority that, in the military service, it is a well-established and long-continued practice to regard sentences of courts-martial, such as are here under consideration, as cumulative, and to execute them consecutively, one upon the expiration of another in the order of their imposition. Dig. Op. J. A. Gen., Ed. 1901, §§ 1479–1481, 2317; 1 Winthrop, Mil. Law, pp. 570, 603; Davis, Mil. Law, p. 161; Winthrop, Abridgment Mil. Law, Ed. 1904, p. 182. In the last work, Col. Winthrop says:

"Where two sentences imposing terms of imprisonment are, in successive trials, adjudged the same offender, the second is cumulative, and may be, and —legally—is, fully executed upon the expiration of the term of the first."

And in the work of Lieut. Col. Davis it is said that such "is the general rule of the service"; and this "whether or not the court, in the second sentence, may have in terms specified that the second punishment should be additional to the first; such second punishment being made cumulative by operation of law irrespective of any direction in the sentence." But it is insisted that we cannot give effect to this well-established and long-continued practice, because it is contrary to the terms of paragraphs 977 and 978 of the Army Regulations, supra, which make the date of the order promulgating the sentence of a court-martial, or the date of the action of the reviewing authority, as the case may be, the date when "a term of confinement" shall begin, if the date be not expressly fixed by "the sentence." While the contention is not without some force, we cannot give it our approval. The paragraphs cited do not in terms relate to different sentences against the same offender, and the fact that, in the practical operation of the military law, such sentences are sometimes imposed by different courts-martial, without either court knowing the result of the trial before the other, as is illustrated in the present case, strongly suggests that these paragraphs were not intended to regulate the dates from which the confinement under a second sentence should be computed. At all events, such an interpretation of them cannot be said to be clearly erroneous, and as it is the interpretation actually put upon them for many years by those who were called upon to act under them, as also by those who were charged with the duty of supervising their enforcement, it ought not now to be overturned. United States v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; United States v. Hill, 120 U. S. 169, 182, 7 Sup. Ct. 510, 30 L. Ed. 627; In re Brodie, 63 C. C. A. 419, 425, 128 Fed. 665. Moreover, paragraph 981, supra, proceeds upon the theory that this interpretation of the other para-

graphs is the true one, for it in terms declares that the second sentence will be executed upon the expiration of the first.

Another contention advanced by the appellant is that as paragraph 981 is comparatively a recent one, and as it designates the offenders to whom it refers as "soldiers," a term usually employed in the Army Regulations as embracing enlisted men, but not officers, it restricts or confines the practice respecting the execution of different sentences against the same offender to enlisted men and excepts officers therefrom. No reason for such a distinction is advanced, and none is perceived. Indeed, it is obvious that it would be both arbitrary and offensive to the sense of justice. Besides, if there had been a purpose to partially abrogate the established practice, it is not likely that it would have been left to implication. It is difficult, therefore, to believe that the word "soldiers" is employed in paragraph 981 in the restricted or technical sense suggested. In its more popular signification it embraces both enlisted men and officers, and it is employed in that sense in some of the Army Regulations, notably paragraph 974. The immediate context presents no obstacle to regarding it as so employed in paragraph 981, and as, when that is done, the paragraph becomes reasonable in itself and in accord with the pre-existing and established practice, we think the word must be given its popular rather than its restricted meaning.

We conclude that the established practice of the service and the Army Regulations unite in requiring that sentences to imprisonment, such as were imposed upon the appellant, be regarded as cumulative, and be executed consecutively, one upon the expiration of another, in the order of their imposition.

The order of the Circuit Court is accordingly affirmed.