## UNITED STATES v. ORMSBEE.

### (District Court, E. D. Wisconsin. May 9, 1896.)

CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE POWERS — REGULATIONS BY SECRETARY OF WAR FOR USE OF CANALS.

The grant by congress by the act of August 17, 1894, to the secretary of war, of authority to prescribe such rules and regulations for the use, administration, and navigation of canals, etc., owned or operated by the United States, as in his judgment public necessity may require, was

not invalid as a delegation of legislative power; and the rules made pursuant thereto have the force of law, so that persons violating the same by drawing off water from a canal are subject to criminal punishment under the provisions of the same act.

This was an indictment against William W. Ormsbee for violating certain rules and regulations prescribed by the secretary of war in relation to canals and similar works owned and operated by the United States.

The offense charged in the indictment is that the defendant knowingly and willfully violated "the rules and regulations prescribed by the secretary of war of the said United States for the use, administration, and navigation of any or all canals and similar works of navigation owned, operated, or maintained by the United States, entitled 'United States regulations for the navigation and use of locks and canals on the Fox River, Wisconsin,' approved February 15, 1895, by then and there knowingly and willfully drawing water from the canal, to wit, the Fox River canal, at the said city of Kaukauna, then and there owned, operated, and maintained by the said United States, to such an extent as to lower the water surface at the dam next below the place where such draft is affected below the crest of the dam." The regulations of the secretary of war referred to in the indictment are founded on the provision of the river and harbor act of August 17, 1894 (chapter 299, 2d Sess. 53d Cong.), which reads as follows: "Sec. 4. That it shall be the duty of the secretary of war to prescribe such rules and regulations for the use, administration and navigation of any and all canals and similar works of navigation that now are or that hereafter may be owned, operated or maintained by the United States as in his judgment public necessity may require; such rules and regulations shall be posted in conspicuous and appropriate places for the information of the public; and every person and every corporation which shall knowingly and willfully violate such rules and regulations, shall be deemed guilty of a misdemeanor, and on conviction thereof in any district court of the United States within whose territorial jurisdiction such offense may have been committed, shall be punished by a fine not exceeding five hundred dollars, or by imprisonment (in case of a natural person) not exceeding six months, in the discretion of the court." The district attorney cites, as further applicable thereto, sections 9 and 10 of the act of congress approved September 19, 1890 (26 Stat. 426), prohibiting interference with government works in navigable waters, or "the creation of any obstruction not affirmatively authorized by law, to the navigable capacity of any waters, in respect of which the United States has jurisdiction"; and section 7, as amended by chapter 158 of the act approved July 13, 1892 (27 Stat. 88), by which it is prohibited "to excavate or fill, or in any manner to alter or modify the course, location, condition or capacity of any port, roadstead, haven, harbor, harbor of refuge. or enclosure within the limits of any breakwater, or of the canal of any navigable water of the United States, unless approved and authorized by the secretary of war."

J. H. M. Wigman, U. S. Atty.
Quarles, Spence & Quarles, for defendant.

SEAMAN, District Judge (after stating the facts as above). In support of the motion to quash the indictment the contention is that the regulations of the secretary of war, of which violation is alleged, depend for their validity upon section 4 of the act of August 17, 1894; that there is no exercise of the will or discretion of congress in the act, no prohibition of distinct acts or course of conduct, but that it expressly delegates to the secretary of war all of the law making contemplated by the act, and simply prescribes in advance the punishment for offenses which may be so established; that an offense created solely through such delegation cannot be made indict-

able. The sovereign power to make national laws is vested in congress, and it is a settled maxim in constitutional law that this power cannot be delegated; that "the power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved." Cooley, Const. Lim. 137. This rule, however, applies only to powers which are strictly and exclusively legislative, and there is a wide range of subjects, which may be regulated by direct legislation, but for which general provision may be made, and "power given to those who are to act under such general provisions, to fill up the details," for, as remarked by Chief Justice Marshall, "congress may certainly delegate to others powers which the legislature may rightfully exercise itself." Wayman v. Southard, 10 Wheat. 1, 43. Therefore the provision of the judiciary act which empowered the courts to adopt rules of practice and forms of procedure is a valid delegation, although the discretion conferred was quasi legislative. Id.; Suth. St. Const. § 68. So the power of the secretary of war to prescribe rules and regulations for the government of the army, and like authority in the secretary of the navy over his department, have been sustained, and within their sphere of action the regulations have the "force of law." U. S. v. Eliason, 16 Pet. 291; Gratiot v. U. S., 4 How. 80; Smith v. Whitney, 116 U. S. 167, 6 Sup. Ct. 570. The examples of valid delegations to executive departments of like effect are numerous, but I deem it unnecessary to multiply citations, and mention only for their clear exposition of the rule and the exception which may apply here the following: Tilley v. Railroad Co., 5 Fed. 641; Railway Co. v. Dey, 35 Fed. 866; In re Griner, 16 Wis. 423. If either this act of congress which directs that "rules and regulations for the use, administration, and navigation" of the canals and works of navigation "owned, operated, or maintained by the United States" be prescribed by the secretary of war, or the regulations referred to as adopted thereupon imposed the requirement or restraint of action or conduct which would be lawful but for the attempted legislation, there would be occasion for the inquiry whether the legislative will had been distinctly exercised and pronounced, in some general provision at least, either in this or some cognate enactment; and it would then become necessary to consider the distinctions as to delegation of power, for which the defendant contends, as pointed out in Field v. Clark, 143 U. S. 649, 693, 12 Sup. Ct. 495, and the authorities there approved, namely, that "the legislature cannot delegate its power to make the law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." Locke's Appeal, 72 Pa. St. 491. Here, however, the indictment alleges an offense committed by "knowingly and willfully drawing water" from a canal "then and there owned, operated, and maintained by the said United States," and thereby lowering the water surface below the crest of the dam,—an interference with the property and proprietary rights of the government. Presumptively, compensation has been rendered

to all riparian owners, and all rights in and control of the waters of the canal are vested in the United States, and no persons can have use, either of water or works, except under permission, and subject to any regulations which may be imposed. Without such permission the use would constitute a trespass. In this case congress provides that permission may be granted through rules and regulations to be adopted by the executive department having charge of the works. It is true that congress might prescribe the rules, either in general terms or in detail, but they are clearly of administrative, rather than legislative, nature, and may be relegated entirely to any executive agency, either with or without direct provisions by congress. The discretion which is conferred, having regard to the use and care of the property of the United States, seems to appertain to the executive department, and to be of the class defined in U. S. v. Eliason, 16 Pet. 291, 301. The regulations so made constitute the only permission for using the water, and without permission there can be no claim of right to use, I presume, even without declaration by congress to that effect; but section 7 of the act of September 19, 1890, as amended by the act of July 13, 1892, clearly prohibits any use "unless approved and authorized by the secretary of war." I am of opinion that regulations for the purpose stated in the indictment may be established by the secretary of war, and that they have the "force of law" within those purposes when adopted and promulgated as directed by the act. Gratiot v. U. S., 4 How. 80, 117. Therefore the motion to quash the indictment will be overruled.