AtkiNSON, Judge,
delivered the opinion of the court:
This is a suit by a civilian clerk in the Subsistence Department of the Army to recover for expenses incurred by him for board, lodgings, and laundry between April 9 and July 20,1911, while performing temporary duty in the office of the chief commissary at San Antonio, Tex. The claimant had held the position of civilian clerk in the Subsistence Department at large since August 2,1906, and on March 9,1911, Was on duty at Fort Eiley, Kans., where he had been since March 24,1909. On March 7,1909, the Commissary General recommended that he, together with other civilian clerks in the same service, be relieved from their duty “ at their respective stations and directed to proceed at once to San Antonio, Tex., * * * for temporary duty with a division to be formed at that point.” This recommendation was duly approved, whereupon the claimant left Fort Eiley March 9, 1911, and arrived at San Antonio the next day, and was there assigned to duty. He served at San Antonio till July 20, 1911, when he was relieved from such temporary duty and *272 was returned to Fort Riley, where he assumed his regular duties.
This claim is based upon the provisions of paragraph 744 of the Army Regulations, which, so far as it relates to this case, is as follows:
“ Reimbursement of actual expenses when traveling under competent orders will be allowed, under the following heads, to civilians in the employ of any branch of the military service, excepting the expert accountant of the Inspector General’s Department, paymaster’s clerks, and those mentioned in paragraph 745, viz:
* * * * * * *
“(5) Cost of meals and lodgings, including baths, tips, and laundry work, not to exceed $4.50 a day, while on duty at places designated in the orders for the performance of temporary duty.”
The plaintiff received subsistence under this regulation for 30 days, but was refused it for the balance of the time he was on such temporary duty at San Antonio, and it is for the sum so refused that this suit is brought.
It is conceded by the defendants that paragraph 744 above was in force at the time of the assignment of the claimant to such temporary service and that if it had remained in force during the whole period of such service he would be entitled to recover in this suit. The defendants contend, however, that this regulation was so modified by the proper authorities March 28, 1911, as to entitle the claimant for subsistence while on such temporary duty for 30 days only. This is denied by the claimant, and that is the question for decision.
The facts connected with the alleged modification of this regulation are as follows: December 15, 1910, the Quartermaster General addressed a letter to the Secretary of War calling his attention to the fact that some of the men assigned to temporary duty in his department had so remained for some time and that “the charge on account of their personal expenses against the appropriation for the Quartermaster Department is in the aggregate very large ” and recommended that payment for such subsistence be limited to 30 days. This letter was returned to the Quatermaster Gen *273 eral with this indorsement: “Eespectfully returned to the Quartermaster General, approved as within recommended.” March 23, 1911, the Quartermaster General addressed another letter to the Secretary of War calling his attention to the fact that the foregoing correspondence and approval only applied to the Quartermaster’s Department and recommended that it be extended to the other departments of the military service, and closed his letter by saying: “ The balance of the appropriation available for payment of traveling and per diem expenses of civilian employees for the current fiscal year is barely sufficient to pay such expenses for more than the first 30 days.” This letter received the concurrence of Maj. Gen. Wood, and was indorsed by the Secretary of War, “Approved.”
No statute is involved. A regulation of the Army alone is the issue. The main point upon which the case hinges is, Did the Secretary of War act within the scope of his authority under the acts of Congress when he changed the regulatipns of his department relative to civil-service clerks under his control, who were by him, or by his orders, assigned to temporary duty at points other than their regular places of business, or whether such change must be made by an individual or personal order of the President, who is the commander in chief of the Army? And did the change in the Army Eegulations made by the Secretary of War, as shown by the findings, comply with the acts of Congress relating to this and similar cases?
It is insisted by counsel for plaintiff that the President can not delegate to a subordinate, who in this case was the Secretary of War, the power conferred upon him by an act of the Congress to make or amend Army Eegulations, as was herein done. In other words, the contention is that the issuing of such regulations must be distinctively the personal act or order of the President, and therefore the Secretary of War, through the channels followed in this case, did not possess the. power or authority to suspend, modify, amend, or change the Army Eegulation relating to traveling allowances of civilian employees in the various branches of the public service in his particular department when they were *274 under assignment by his orders to temporary duty at places other than where they were regularly employed.
Section 161, Revised Statutes, authorizes the head of each department to prescribe regulations, not inconsistent with law, for the government of his department, and section 216 is to the same practical effect. Smith's case, 23 Cl Cls., 452, 460. It is also well and, we think, conclusively settled that the acts of the heads of departments, within the scope of their respective duties, are treated as the acts of the President. Wilcox v. Jackson, 13 Pet., 266; Wolsey v. Chapman, 101 U. S., 755, 769; Jones v. United States, 137 U. S., 203, 217; Truitt v. United States, 38 C. Cls., 398, 403; Brodie's case, 128 Fed., 665, 669.
It has been often determined by this court and also by the Supreme Court that the President may legally act through the head of a department. The early case of United States v. Eliason, 16 Pet., 291, 302, which has never been changed by the Supreme Court, is conclusive of the point at issue in the case at bar, because in that case, as in this, an Army Regulation had been changed by order of the Secretary of War affecting certain allowances claimed by Eliason. In passing upon that case the court said, inter alia, that—
“ The Secretary of War is the regular constitutional organ of the President for the administration of the military establishment of the Nation, and rules and orders publicly promulgated through him must be received as the acts of the Executive, and as such be binding upon all within the sphere of his legal and constitutional authority.
“ Such regulations can not be questioned or defied because they may be thought unwise or mistaken. The right of so considering and treating the authority of the Executive, vested as it is with the command of the military and naval forces, could not be intrusted to officers of any grade inferior to the commander in chief; its consequences, if tolerated, would be a complete disorganization of both the Army and Navy.”
In the later case of Runkle v. United States, 122 U. S., 543, 557, it was held that—
“There can be no doubt that the President, in the exercise of his executive power under the Constitution, may act through the head of the appropriate executive department. *275 The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. That has been many times decided by this court.”
Confirmatory of the above principles so clearly expressed by the highest court, which long since has been accepted as the law of this country, is the case of the United States v. Ormsbee, 74 Fed., 207.
If, therefore, as above shown, the Secretary of War, as the head of one of the great departments of the Government, was clothed with the power to make proper regulations, not inconsistent with the acts of the Congress, for the government of his department, it can not properly be contended that he can not suspend, alter, amend, or abrogate them when necessary so to do in the interest of the public service. Savings Bank v. United States, 16 C. Cls., 358, 349. In Brodie's case, supra, it was held, on page 669, that—
“ Paragraph 940 of the Army Eegulations, before quoted, is a rule or regulation promulgated by the Secretary of War, under authority of the President, and is not a statute. As has been shown, it was subject to modification by the authority which made it, and its modification would be completely effected and shown by the promulgation of a new or different rule or regulation upon the subject by the Secretary of War, acting under the presumed approbation and direction of the President.”
There is no controversy over the facts in this case. Plaintiff was a civilian civil-service clerk of class 1 in the Subsistence Department of the United States Army, stationed at Fort Eiley, Kans., as hereinbefore stated, where he had been serving for about two years. By an order of the Secretary of War he was transferred to San Antonio, Tex., for temporary service. He reached said city the evening of the next day. Under section 744, Army Eegulations, his traveling expenses were allowed and paid, and he was reimbursed for hotel board and other expenses at the rate of $3.50 per day for the first 30 days of his stay at San Antonio. Before the expiration of said 30 days he was officially notified that the Secretary of War had caused section 744 of the Army Eegulations to be amended to the effect that after the ex *276 piration of said 30 days be (plaintiff) would be required to pay for his subsistence, which he accordingly did at the rate of a little less than $1 per day during the remaining three months of his stay at San Antonio, and to recover that board bill this suit was instituted.
Our conclusion is, the fixing of 30 days as the limit of temporary duty in his case was wholly within the discretion of the Secretary of War, and consequently plaintiff has no legal claim against the United States in this suit, and his petition should accordingly be dismissed.
Petition dismissed and judgment is rendered in favor of the defendants.